[Crim. No. 3900.   First Dist., Div. One.   Feb. 8, 1962.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  WILLIAM
BRUCE  BEVERLY,  Defendant  and  Appellant.

William Bruce Beverly, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

BRAY, P. J.—Defendant, in propria persona, appeals from judgment of conviction, after jury trial, of second degree burglary,[1,2] and from the order denying new trial.

## QUESTIONS PRESENTED

At defendant's request this court appointed an attorney to represent him on this appeal. The attorney had the record augmented to include the arguments of counsel, and apparently made a painstaking examination of the entire record. Thereafter he wrote to defendant at length, stating that he had concluded that "there is no meritorious point to be urged upon appeal." Sending us a copy of the letter, the attorney requested to be relieved of his assignment. We granted this request and gave defendant, from time to time, extensions of time in which to file an opening brief. Defendant having failed so to do for approximately eight months, the appeal was submitted. The court has thoroughly examined the record, including the points which, according to the counsel's letter, defendant desired to raise. From such examination we are convinced there is no merit to the appeal.

Defendant's contentions are:

(1) Alleged misconduct of the district attorney in mentioning defendant's prior convictions.

(2) Alleged conflict in the testimony of Officers Frazier and Morris.

(3) Alleged error in instructions on circumstantial evidence.

An additional point which the court, from its study of the record, felt should be considered, is:

(4) Was there an unlawful stopping of defendant's car and search and seizure?

## EVIDENCE

About 9:33 p. m. Police Officers Frazier and Morris were patrolling in a radio car the Hunter's Point area in San Francisco. Officer Frazier observed a car coming out of Keith Street. The portion of the area from which the car was emerging consisted primarily of automobile wreckers' shops.

[1] Defendant admitted three prior convictions, two violations of section 476a, Penal Code, and one violation of section 476.

[2] Lowell McMurray was jointly charged with defendant and also found guilty. McMurray was sentenced to one year in the county jail, defendant to the state prison. McMurray did not appeal.

Keith Street here is a dirt road, running through this area which has no residences at all, and in addition to the automobile wreckers has meat places, tallow works, and a battery exchange. As the officers, in uniform and in a police marked automobile, approached the oncoming car the latter did not increase its speed. The officers turned their spotlight (they did not use the red light) on the car. It then pulled over, and Officer Frazier went over to it to interrogate the occupants. Officer Frazier testified that his attention was attracted to the car because "it was kind of unusual for a car to be coming out of that area at that time . . . all the auto wreckers at that time is usually closed." Frazier asked defendant, who was the driver of the car, what he was doing coming out of that area. Defendant said that he wasn't in the area. Officer Frazier noticed several radiators in the back seat of the car. When asked where he got the radiators defendant replied "from here and there in the last couple of days. . . ." Defendant said that he had bought them from a man named Charley. (Defendant testified that he said that he was taking them to Charley. Officer Morris testified that he heard defendant make this latter statement.) Frazier then asked McMurray what he knew about the radiators. McMurray said that he had been with defendant since 11 a. m. and that the radiators were in the car at that time.

On request defendant opened the trunk of his car, where there were two batteries and two generators. After another patrol car arrived on call, Frazier and Morris checked the automobile wreckers' area. Approaching the B & F Wreckers they observed that the center panel of the door was at an angle. Entering, they phoned the manager of the company, who came down. On checking, the manager found missing radiators, generators and batteries which were there when he closed for the day about 8:30 p. m. Going to defendant's car he identified the radiators, generators and batteries therein as the missing ones. The manager testified that defendant (alone) had been around the yard in the morning of the day in question, and again just before he closed, and had been in the office where the radiators were in sight. He stated both defendant and McMurray were on the premises the previous morning. In defendant's car there was additionally a "cinch handle" which the manager identified as one missing from a workman's tool box about half an hour after defendant had been on the premises the previous day.

Defendant testified that in the morning of the day he was

arrested he had been in a bar run by a man known as "Mac" who introduced him to a man who wanted a taillight and a quarter panel put on his car. Defendant and the customer remained in the bar from about 9 o'clock until 1 or 2 in the afternoon. Leaving the keys to his car with the bartender for the customer to use defendant's car if he so desired, defendant in the customer's car went to various wrecking yards including B & F's looking for the needed parts. He claimed to be alone. He returned to the bar and then went several places, ending up at Bridgeview about 8 p. m. There he picked up McMurray, who wanted him to drive him home, picking up some meat which McMurray had cached in a ditch about a block away. When they arrived at the ditch McMurray claimed to have found the radiators, etc., in the ditch, and asked defendant if he would haul them for him. Defendant agreed, and McMurray placed them in the car. They then proceeded to Charley Cambridge's who defendant claimed would know where Mac had placed defendant's keys, Mac's place being closed when he visited it prior to going to Bridgeview. On the circuitous route to Charley's they were stopped by the police. Defendant claims that he told this same story to the police.

The manager of the apartment where defendant lived testified that he saw defendant around there about 11 a. m., at 1:30-2 p. m. and about 4-5 p. m. that day, and that defendant was driving his own car.

Defendant's girl friend, who shared the apartment with him, testified that defendant was in and out of the apartment all day and left about 7 p. m. He was using his own car.

McMurray testified that he did not see defendant before 7 p. m. and then it was at Bridgeview. He finally changed the time to 9 p. m. Defendant took him to get the meat from the ditch. The events of the evening were vague to him because he had been drinking. At the ditch he stumbled over the radiators. Defendant helped him place them in the car.

### Sufficiency of the Evidence

Obviously the evidence was sufficient to support the verdict. At 8:30 the goods were in the B & F Auto Wreckers' office; at 9:30 in the possession of defendants. That they were stolen is clear. While mere possession of stolen goods is not sufficient alone to sustain a conviction of burglary, it is a circumstance strongly indicating guilt, and only slight corroborative evidence is needed to sustain con-

viction. (*People* v. *Robinson* (1960) 184 Cal.App.2d 69 [7 Cal.Rptr. 202]; *People* v. *Stokes* (1960) 184 Cal.App.2d 780 [7 Cal.Rptr. 919].) ▆ Where the goods possessed were but recently stolen the amount of corroborative evidence need be very slight. (*People* v. *Swanson* (1932) 120 Cal.App. 173 [7 P.2d 380].) ▆ Guilty conduct (*People* v. *Montgomery* (1956) 145 Cal.App.2d 121 [302 P.2d 48]) and false explanations are sufficient to sustain a conviction of burglary when defendant is found in possession of stolen goods. (*People* v. *McClure* (1955) 133 Cal.App.2d 631 [284 P.2d 887].) ▆ Defendant's false statement to the officers that he had bought the goods from Charley that morning and was taking them to him, his statement that he had not used his car all day, and the other circumstances of the case, all support the verdict.

(1) *District Attorney's Reference to Prior Convictions.*

▆ On cross-examination the district attorney brought out only the dates and crimes of which defendant had been convicted. This he had the right to do in impeachment of defendant's testimony. (*People* v. *Adamson* (1946) 27 Cal.2d 478, 494 [165 P.2d 3]; *People* v. *Allen* (1961) 189 Cal.App.2d 706 [11 Cal.Rptr. 440].)

▆ In argument the district attorney made a fair statement to the effect that defendant's priors must not be considered by the jury as indicating that he was likely to be guilty of the offense with which he was charged, but only to be considered on the question of defendant's credibility. Again, the district attorney was acting properly.

(2) *Alleged Conflict in Testimony of the Police Officers.*

▆ Officer Frazier stated in his police report that defendant said he purchased the radiators from Charley. Officer Morris testified that he thought defendant said that he was going to see Charley, which is what defendant testified he said. This conflict cannot be termed a substantial issue in the case justifying a reversal. Belief in either statement would not undermine the substantial evidence to support the verdict. (See *People* v. *Rios* (1959) 172 Cal.App.2d 623 [342 P.2d 317], where the testimony of two deputy sheriffs as to on what streets a meeting with the defendant took place was conflicting.)

(3) *Instructions on Circumstantial Evidence.*

▆▆ Limiting his reference to certain general instructions on the subject of circumstantial evidence, defendant contends

they were inadequate. However, these were merely preliminary, and later the court fully instructed on the subject. There was no error here.

(4) *Right to Stop Car and Search and Seizure.*

In the court's study of the record, the only question which seemed at first blush to be worthy of some consideration is that bearing on the unlawful search and seizure rule. However, a full examination of the evidence shows no violation of that rule. If the officers had the authority to stop defendant's car to interview its occupants, then when Officer Frazier looked through the window he was not required to blind himself to what was in plain sight and it would not even be a search. ▪ "A police officer has a right to make inquiry in a proper manner of persons upon the public streets at night. . . ." (*People* v. *Murphy* (1959) 173 Cal.App.2d 367, 377 [343 P.2d 273]; *People* v. *Nichols* (1961) 196 Cal.App. 2d 223, 228 [16 Cal.Rptr. 328].) ▪ Looking at that which is open to view is not a search. (*People* v. *Spicer* (1958) 163 Cal.App.2d 678, 683 [329 P.2d 917].) It has even been held that "the use of a flashlight to view from the outside the contents of a car is not an unlawful entry or search." (*People* v. *Linden* (1960) 185 Cal.App.2d 752, 757 [8 Cal. Rptr. 640]; see cases there cited.) "The officers were not required to blind themselves to what was in plain sight. . . ." (P. 757.)

▪ There can be no doubt but that the circumstances here justified the officers in stopping defendant's car to interrogate the occupants. The area was nonresidential and comprised of businesses, particularly automobile wreckers, which are not ordinarily open at night. The officer testified that it was unusual for a car to be coming out of that area at that time of night. ▪ The situation was such that the following from *People* v. *Ellsworth* (1961) 190 Cal.App.2d 844, 846 [12 Cal.Rptr. 433], is applicable: "The courts of this state consistently have adhered to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the discharge of his duties [citations]. . . . The right to interrogate, under the circumstances noted, includes the right to stop the automobile in which the person to be interrogated is riding. [Citations.] ▪ Such a procedure does not constitute an arrest even though the person interrogated may be de-

tained momentarily [citations], and the existence of facts constituting probable cause to justify an arrest is not a condition precedent to such an investigation. [Citation.]"

▇▇▇ Being justified in stopping the car for interrogation of its occupants, and seeing the radiators which were in plain sight, their presence in the car at that place and time being suspicious circumstances, the officers were fully justified in searching the car and arresting the occupants. There was no illegal search or seizure.

Judgment and order affirmed.

Tobriner, J., and Sullivan, J., concurred.