[Crim. No. 7295. In Bank. Apr. 18, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. CURTIS RAY MICKELSON, Defendant and Respondent.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Harry Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Gladys Towles Root, Eugene V. McPherson and Philip C. Greenwald for Defendant and Respondent.

TRAYNOR, J.—Defendant was charged in two counts of an information with committing burglaries of telephone booths, in violation of Penal Code, section 459. His motion to set aside the information was granted (Pen. Code, § 995), and the People appeal. The Attorney General concedes that there was no evidence at the preliminary hearing to support count I and seeks a reversal only as to count II.

A Burbank police officer discovered the physical evidence supporting count II in the course of searching an overnight bag found under the front seat of an automobile in which defendant had been riding and which Don Zauzig had been driving. The bag contained $85.90 in nickels, dimes, and quarters. At defendant's preliminary hearing, the bag and its contents were introduced in evidence, and Zauzig testified to his and defendant's commission of the burglary. Zausig's arrest and his availability as a witness were direct results of the search that disclosed the physical evidence of the burglary. If that search was illegal, neither the physical evidence nor Zauzig's testimony is competent to support the information.

(*Silverthorne Lbr. Co.* v. *United States,* 251 U.S. 385, 392 [40 S.Ct. 182, 64 L.Ed. 319, 321, 24 A.L.R. 1426, 1428]; *Weiss* v. *United States,* 308 U.S. 321, 330-331 [60 S.Ct. 269, 84 L.Ed. 298, 303]; *Nardone* v. *United States,* 308 U.S. 338, 341 [60 S.Ct. 266, 84 L.Ed. 307, 311-312]; *Wong Sun* v. *United States,* 371 U.S. 471 [83 S.Ct. 407, 417, 9 L.Ed.2d 441]; *People* v. *Berger,* 44 Cal.2d 459, 462 [282 P.2d 509]; *People* v. *Dixon,* 46 Cal.2d 456, 458 [296 P.2d 557]; *People* v. *Schaumloffel,* 53 Cal.2d 96, 101-102 [346 P.2d 393]; *People* v. *Ditson,* 57 Cal.2d 415, 439 [20 Cal.Rptr. 165, 369 P.2d 714].)

The Attorney General contends, however, that the arresting officer had reasonable cause to arrest Zauzig for a recent robbery in the neighborhood and that the search of the car was therefore justified as incidental to the arrest. Before the decision of the United States Supreme Court in *Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081], we were free to determine such an issue under the California decisions setting forth the rules governing police investigations and arrests. In view of the holding in that case that the Fourteenth Amendment requires state courts to exclude unconstitutionally obtained evidence, we must determine at the outset whether the federal rules governing police investigations and arrests have superseded our own. There are significant differences between the respective rules that are relevant to this case.

In *Henry* v. *United States,* 361 U.S. 98, 103 [80 S.Ct. 168, 4 L.Ed.2d 134, 139], the United States Supreme Court held that an arrest occurs when an automobile is stopped during the course of a criminal investigation, and if the officer does not have reasonable cause to arrest the occupant at that time, the arrest is unlawful. Anything the officer learns as a result of stopping the automobile is inadmissible in evidence and cannot justify a search. (See also *Brinegar* v. *United States,* 338 U.S. 160, 166 [69 S.Ct. 1302, 93 L.Ed. 1879, 1885]; *Rios* v. *United States,* 364 U.S. 253, 261-262 [80 S.Ct. 1431, 4 L.Ed.2d 1688, 1693-1694].) In this state, however, we have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. If the circumstances warrant it, he may in self-protection request a suspect to alight from an automobile or to submit to a superficial search for concealed weapons. Should the investigation then reveal probable cause to make an arrest, the

officer may arrest the suspect and conduct a reasonable incidental search. (*People* v. *Simon*, 45 Cal.2d 645, 650 [290 P.2d 531]; *People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Beverly*, 200 Cal.App.2d 119, 125 [19 Cal.Rptr. 67]; *People* v. *King*, 175 Cal.App.2d 386, 390 [346 P.2d 235]; *People* v. *Anushevitz*, 183 Cal.App.2d 752, 755 [6 Cal. Rptr. 785].)

The *Mapp* case did not determine whether or not the states must follow all the federal rules. Neither did *Elkins* v. *United States*, 364 U.S. 206 [80 S.Ct. 1437, 1453, 4 L.Ed.2d 1669], which on this matter held only that the conduct of state officers would be measured against the federal rules when state-secured evidence was offered in federal prosecutions.

A state rule governing police procedure is not unconstitutional merely because it permits conduct in which a federal officer may not lawfully engage. The Fourth Amendment[1] itself sets forth no more than the basic outlines of lawful law enforcement. It becomes meaningful in specific situations only by reference to the common law and statutory law governing the issuance of warrants, the authority of officers, and the power to arrest. Illegally obtained evidence may be excluded by the federal courts for various reasons. It may be excluded because it was obtained in a way that could not constitutionally be authorized. It may be excluded because it was obtained in violation of a federal statute or a common-law rule or a state rule applicable to federal officers. It may be excluded by virtue of the Supreme Court's monitorship of the federal administration of criminal justice. (Fed. R. Crim. Proc., 3, 4, 26, 41; 18 U.S.C. App., pp. 3407-3452 (1958).)

The United States Supreme Court has not interpreted the Fourth Amendment as requiring that court to day down as a matter of constitutional law precise rules of police conduct. Indeed, its rule allowing a search by a federal officer without a warrant as incident to a lawful arrest permits reference to state law to determine the validity of the arrest. (*Johnson* v. *United States*, 333 U.S. 10, 15 [68 S.Ct. 367, 92 L.Ed. 436,

---

[1]'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.''

441] ; *United States* v. *Di Re,* 332 U.S. 581, 589 [68 S.Ct. 222, 92 L.Ed. 210, 217].) Accordingly, before a state rule governing police conduct may be struck down, it must appear that neither Congress nor a state legislature could authorize it. If a state adopts rules of police conduct consistent with the requirements of the Fourth Amendment and if its officers follow those rules, they do not act unreasonably within the meaning of the amendment although different rules may govern federal officers.

 We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified. (See Barrett, *Personal Rights, Property Rights, and The Fourth Amendment,* 1960 Sup.Ct. Rev. 46, 65-66, 69-70.)

The United States Supreme Court apparently concluded that the situations presented in the Henry, Rios, and Brinegar cases allowed no middle ground (see dissenting opinion of Jackson, J. in *Brinegar* v. *United States,* 338 U.S. 160, 183 [69 S.Ct. 1302, 93 L.Ed. 1879, 1894]), and hence that the officers were not justified in stopping the defendants' automobiles unless they had probable cause to make arrests. It does not follow that its conclusion was constitutionally compelled. Given the absence of legislation, the court had to articulate the governing rule and enforce compliance with it. It did not thereby foreclose Congress or the states from articulating other reasonable rules consistent with the Fourth Amendment.

 It remains to determine whether the search in this case complied with the rules of this state. The arresting officer testified that he arrested defendant and Zauzig shortly before 2 a.m. about 20 minutes after he had gone to a market on San Fernando Road where a robbery had just been reported. He was told by other officers at the market that the robber was a fairly tall white man of large build with dark hair who was wearing a red sweater and armed with a .45 automatic. The officer searched the area on foot for about 10 minutes and then returned to his car to search a wider area. While driving west on Providencia about six blocks from the market he saw a station wagon coming toward him with two

persons in it. The driver appeared to be a large white man with dark hair wearing a red sweater or jacket. The officer saw the station wagon turn south on San Fernando toward the market, and he turned south into an alley and then west at the next street. He then saw the station wagon turn west from San Fernando on the same street and followed it. The station wagon went to the end of the street where it came to a deadend, made a U-turn, and proceeded back toward San Fernando. The officer circled a block to his right and turned south on San Fernando. He was then a block or two behind the station wagon, which was traveling south on San Fernando at about 25 or 30 miles per hour. The officer overtook the station wagon and observed the passenger ''bend forward in the seat, forward and down and raise back up.'' He turned on his red light, the station wagon pulled over and stopped, and the officer parked behind it. He radioed his location to headquarters and requested a backup car for assistance. Meanwhile Zauzig got out of the driver's seat of the station wagon and walked to the officer's car. The officer asked Zauzig where he was going, and Zauzig told him he was going home to Glendale, that he was more or less lost, and had been driving up and down sidestreets looking for the freeway. He showed the officer his driver's license. The assisting officers arrived, and the officers and Zauzig walked to the station wagon. Defendant was sitting in the right front seat and got out on request. The arresting officer looked under the right front seat and on the floorboards and saw an overnight bag stuffed under the right front seat. He pulled it out, unzipped it, and saw four screw drivers, a flashlight, a pair of canvas gloves and two socks. One sock was knotted at the top and was filled with something that jingled. When he took the bag out of the car, the officer asked Zauzig what it was, and Zauzig told him that it was his basketball equipment. The officer asked what was in the sock, and Zauzig told him that he had some dimes. The officer opened the sock and found nickels, dimes, and quarters. He arrested Zauzig and defendant on suspicion of burglary. The officer also testified that there was nothing in his conversation with Zauzig that would indicate that he had perpetrated a robbery other than that he acted a bit friendly. The movements of the car were such that it was obvious that the occupants were either trying to evade the officer or were confused and did not know the area very well. His purpose in examining the bag was the ''possibility of a gun being there.'' After he

had talked to Zauzig and defendant he was satisfied that they had not been involved in the robbery.

It was not unreasonable for the officer to stop Zauzig's car for investigation and to take reasonable precautions for his own safety. He did not have probable cause, however, to arrest Zauzig for robbery. There could have been more than one tall white man with dark hair wearing a red sweater abroad at night in such a metropolitan area. Although Zauzig was in the vicinity of the robbery, he was not observed until about 20 minutes after it occurred when he was driving toward the scene of the crime, not away from it. The officer had no information that the robber had an automobile or a confederate. The erratic route of the car and defendant's movement in the seat were at most suspicious circumstances. The officer's investigation elicited identification upon request and a story consistent with the movements of the car and the officer's own assessment of those movements. Both occupants were out of the car away from any weapons that might have been concealed therein. Instead of interrogating Zauzig and defendant with respect to the robbery or requesting them to accompany the officers the few blocks to the market for possible identification, the officer elected to rummage through closed baggage found in the car in the hope of turning up evidence that might connect Zauzig with the robbery. That search exceeded the bounds of reasonable investigation. It was not justified by probable cause to make an arrest, and it cannot be justified by what it turned up. (*People* v. *Brown*, 45 Cal.2d 640, 643-644 [290 P.2d 528].)

The order is affirmed.

Gibson, C. J., Schauer, J., Tobriner, J., and Peek, J., concurred.

PETERS, J.—I concur.

I agree that the search here involved was illegal, both under state and federal law. Therefore, I agree that the order appealed from must be affirmed. But, in my opinion, such holding makes it unnecessary to discuss the scope and impact on state law of the decision of *Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081]. In my opinion the determination of that important constitutional question should be left to a case where it is directly involved.

McCOMB, J.—I dissent. I would reverse the order of the trial court as to count II and affirm the order as to count I,

for the reasons expressed by Mr. Presiding Justice Fox in the opinion prepared by him for the District Court of Appeal in *People* v. *Mickelson* (Cal.App.) 26 Cal.Rptr. 152.

Appellant's petition for a rehearing was denied May 14, 1963. McComb, J., was of the opinion that the petition should be granted.