[Crim. No. 3468.    Third Dist.    July 15, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE A. COVE, Defendant and Appellant.

George A. Cove, in pro. per., and Robert Carl Anderson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and Doris H. Maier, Assistant Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—A jury found defendant guilty of violating Penal Code section 12021, which prohibits possession of a pistol by any person who has been convicted of a felony. He was sentenced to state prison and appeals from the judgment.

Mrs. Mary Jane Taylor lived in an apartment above the apartment occupied by defendant. At approximately 3:30 a.m. on a Sunday morning, Mrs. Taylor was awakened by a knock on her door. When she went to the door, no one was

there, but she saw a person (whom she later identified as defendant) walking down the stairs. She had just returned to bed when she heard another knock. She answered the door, leaving the night chain on. Defendant was at the door again and asked her why she was making so much noise. Mrs. Taylor released the night chain and opened the door, telling defendant that all the noise was coming from his apartment and that any further disturbance would cause her to call the police. Defendant then pulled a pistol out of the waistband of his trousers and pointed it at Mrs. Taylor. She slammed the door and her husband called the police.

Officers Lyons and French of the Sacramento Police Department received a radio call instructing them to investigate a disturbance involving a man with a gun. They went to the apartment building. Mrs. Taylor told them that a man in the apartment below had come upstairs and threatened her with a gun. Officer Lyons went to defendant's front door, while French went to the rear of defendant's apartment and peered in through a window. Lyons knocked and in response to an inquiry identified himself as a policeman. Defendant came to the door, opening it slightly. Lyons told him that the police had received a disturbance call and that he wanted to talk to him. Defendant partially closed the door and disappeared from sight for a brief interval. He then returned to the door, opened it fully, stepped back and gestured, saying: ''Does it look like there's a disturbance going on?'' Lyons later testified that he regarded appellant's gestures as an invitation and he entered the apartment. Meanwhile, Officer French was watching through a window at the rear. He saw defendant in the apartment with another man and a woman. He observed defendant go to the front door with a gun in his hand, open the door slightly, step back from the door and then hand or toss the gun to his male companion, who placed it under a sofa cushion. French immediately went around to the front door. While it was still open to admit Lyons he entered and went straight to the sofa where the gun had been concealed. Stating that defendant had a gun, French removed the pistol from the sofa. There were seven rounds in the clip and one cartridge in the firing chamber.

Officer Lyons went upstairs and heard Mrs. Taylor's description of her encounter with defendant. She then accompanied him downstairs, where she identified defendant. In reply to a direct question, she answered, ''I want that man arrested.'' Defendant then became violent and abusive and

had to be placed in handcuffs. According to the officers' subsequent testimony, defendant was intoxicated. He was taken to the patrol car and at that time Mrs. Taylor signed a ''citizen's arrest'' form, charging defendant with disturbing the peace and brandishing a firearm. After a check revealed that defendant had prior felony convictions, he was charged with a violation of section 12021.

The police officers had no cause to believe that a felony had been committed, nor had defendant committed any law violation in their presence. Hence the officers did not have power to arrest defendant without a warrant. (Pen. Code, § 836.) Mrs. Taylor, however, was authorized to effect a citizens' arrest for misdemeanors committed or attempted in her presence. (Pen. Code, § 837.) These misdemeanors were disturbance of the peace and brandishing a weapon in violation of Penal Code sections 415 and 417. Defendant points out that his pistol was not taken as an incident to the citizen's arrest by Mrs. Taylor or as an incident of lawful arrest by the officers. Hence he characterizes the pistol as illegally seized evidence, which should have been excluded by the trial court pursuant to defendant's objection.

There are conditions other than a search warrant or lawful arrest which permit police investigation and a reasonable precautionary search for a weapon. Officers may properly investigate a citizen's complaint involving a threat to public safety. (*People* v. *Hupp*, 61 Cal.App.2d 447, 450 [143 P.2d 84].) Officers investigating a suspect on the street or in an automobile may in self-protection conduct a superficial search for concealed weapons. (*People* v. *Mickelson*, 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Koelzer,* 222 Cal.App.2d 20, 27 [34 Cal.Rptr. 718].) The facts here diverge from the outdoor pedestrian or automobile situation in that the subject of investigation was in his own dwelling place. Constitutional alertness to possible police invasion of privacy is seemingly sharpened when the area of search is a home or apartment rather than an automobile or a pedestrian abroad on the midnight streets. (*Ker* v. *State of California,* 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726]; *People* v. *Shelton,* 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665].) We say ''seemingly'' because the Fourth Amendment protects sanctity of the person no less than privacy of the home. The problem in each case is to measure the individual instance of police conduct against Fourth Amend-

470

ment standards of reasonableness. (*Ker* v. *State of California, supra,* 374 U.S. 23, 33, 44 [83 S.Ct. 1623, 10 L.Ed.2d 726, 737, 744].) ▮ At this point state courts may consider " 'the practical demands of effective criminal investigation and law enforcement.' " (374 U.S. 23 at p. 34 [83 S.Ct. 1623, 10 L.Ed.2d 726 at p. 738].) Under the circumstances which the police faced here, the realities, the demands of police obligation and self-protective action, did not diverge at all from cases such as *People* v. *Mickelson, supra,* which sanctioned a precautionary weapon check outdoors.[1]

▮ In this case the officers went to defendant's apartment not to seek incriminating evidence but in fresh investigation of a complaint of dangerous conduct. (Cf. *People* v. *Edgar,* 60 Cal.2d 171, 174-175 [32 Cal.Rptr. 41, 383 P.2d 449].) Unlike *Ker* v. *State of California, supra,* there was no unannounced police invasion; unlike *People* v. *Shelton, supra,* there was no peremptory police demand for entry; unlike *People* v. *Reeves,* 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], there was no entry by trickery. After Officer Lyons knocked at the door and identified himself, defendant quickly secreted the gun, threw open the door, stepped back and claimed absence of any disturbance. This course of conduct was an implied invitation to Lyons to step inside and to satisfy himself that conditions conformed precisely to defendant's claim, i.e., no disturbance. The officer was entitled to regard defendant's gestures as an implied invitation to enter. (*People* v. *Baca,* 198 Cal.App.2d 391, 396 [17 Cal. Rptr. 779] ; *People* v. *Smyre,* 164 Cal.App.2d 218, 224 [330 P.2d 489].) Lawful entry, "the indispensable predicate of a reasonable search," had been established. (*Ker* v. *State of California, supra,* 374 U.S. at p. 53 [83 S.Ct. 1623, 10 L.Ed.2d at p. 749].) ▮ Meanwhile, Officer French was peering into the apartment through a rear window. Decisions endorsing such surveillance (e.g., *People* v. *Feeley,* 179 Cal.App.2d 100, 105 [3 Cal.Rptr. 529] ; *People* v. *Andrews,* 153 Cal.App.

---

[1]We willingly subject ourselves to one writer's accusation that the search-and-seizure decisions of the California District Courts of Appeal "have tended to magnify and aggravate the deviations from federal practice introduced by the state Legislature or high court." (Manwaring, *California and the Fourth Amendment,* 16 Stan.L.Rev. 318, 323.) Our alacrity, perhaps, stems from our sustained belief in our own recent observation: "Our zeal to fend off encroachments upon the right of privacy must be tempered by remembrance that ours is a government of laws to preserve which we require law enforcement officers—live ones." (*People* v. *Koelzer, supra,* 222 Cal.App.2d at p. 27.)

2d 333 [314 P.2d 175]) may have been qualified by a recent pronouncement equating police view of the dwelling's interior with physical intrusion (*People* v. *Shelton, supra,* 60 Cal. 2d at p. 747). The exigent situation created by knowledge that someone in the apartment had just used a gun in a menacing fashion amply justified French in "covering" his fellow officer from the rear window. As he looked, he saw defendant respond to Lyons' knock by going to the front door, gun in hand. Next he saw defendant pass the gun to his companion, who hid it under the sofa cushion. French did not have to blind himself to the revelations of plain sight. Danger was in the air. The circumstances compellingly and urgently called on French to get possession of the gun before it was used on his fellow officer or himself. He went after the gun, not to collect evidence but in self-protection. There was a seizure here but no search at all, since French knew exactly where the gun was. The Fourth Amendment, as applied to state action via the Fourteenth Amendment, prohibits only "unreasonable" searches and seizures. (*People* v. *Andrews, supra,* 153 Cal.App.2d at p. 338.) There was nothing unreasonable in this self-protective seizure of a dangerous weapon in close proximity to a man who was either dangerous or gave every appearance of menace.

Once defendant was arrested, Mrs. Taylor, as the arresting person, had statutory authority to take the pistol and deliver it to the magistrate. (Pen. Code, § 846.) She might, of course, use the assistance of the officers for this purpose and leave the weapon in their physical custody.

Defendant, however, charges that the officers violated Penal Code section 833.[2] Under its provisions, he contends, they were required either to arrest defendant or return the weapon; since they did not arrest him (although the citizen did), they could not retain the gun. Just what effect section 833 has, in cases where it applies, we need not determine.[3] It

---

[2]Penal Code section 833, first enacted in 1957, provides: "A peace officer may search for dangerous weapons any person whom he has legal cause to arrest, whenever he has reasonable cause to believe that the person possesses a dangerous weapon. If the officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, when he shall either return it or arrest the person. The arrest may be for the illegal possession of the weapon."

[3]It has been suggested that section 833 extends the right of weapon search to make it independent of an actual arrest. (Witkin, Cal. Criminal Procedure, p. 109; see Fourth Progress Report, Senate Interim Judiciary Committee (1955-57), pp. 434-435.) The statute has also been

has no bearing here. In terms, it deals with an officer's powers and duties where he, the officer himself, has legal cause for an arrest. It apparently imposes upon the officer the alternative of making an arrest or returning the weapon in those cases where he is empowered to make an arrest. It has nothing to do with a citizen's arrest or with a weapon, produced as here, by reasonable self-protective police action taken in the course of investigating a citizen's complaint. Reasonable self-protective search for a weapon as an incident of lawful police investigation is sanctioned by California case law and does not depend on section 833. (*People* v. *Mickelson, supra; People* v. *Martin, supra; People* v. *Koelzer, supra.*) To thrust this statute into a citizen's arrest situation, where the officer himself may be powerless to make the arrest, would require the officer to take the arrestee into custody at the citizen's request and simultaneously hand back his weapon—a ridiculous result hardly within the statutory objective.

Defendant charges that Penal Code section 840 does not permit a citizen's arrest at nighttime upon a misdemeanor charge, hence that his arrest was illegal.[4] This argument is apparently aimed at demonstrating that the pistol was not uncovered as an incident of a lawful arrest, hence constituted illegally seized evidence. As we have concluded, however, legality of the officer's act of securing the gun did not depend on a lawful arrest; thus this phase of defendant's argument does not assist him. There is no claim that illegality of the arrest immunized defendant from criminal liability (see *People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633]).

Similarly, defendant contends that the citizen's arrest was invalid because Mrs. Taylor did not comply with Penal Code section 841 by informing defendant of her intention to arrest him and of the cause for the arrest.[5] A failure to comply

characterized as meaningless and as confusing. (1959-61 Report of Assembly Interim Committee on Criminal Procedure, Assembly Interim Committee Reports, vol. 22, No. 1, pp. 24-25.)

[4]Penal Code section 840 provides: "If the offense charged is a felony, the arrest may be made on any day, and at any time of the day or night. If it is a misdemeanor, the arrest cannot be made at night, unless upon the direction of the magistrate, indorsed upon the warrant, except when the offense is committed in the presence of the arresting officer." (See 36 Ops. Cal. Atty. Gen. 56.)

[5]Penal Code section 841 provides: "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the

with section 841 does not affect admissibility of evidence secured by a search incidental to an otherwise lawful arrest. The requirements of section 841 are unrelated to reasonableness of the search. (*People* v. *Maddox,* 46 Cal.2d 301, 305 [294 P.2d 6] ; *People* v. *Scott,* 170 Cal.App.2d 446, 453 [339 P.2d 162].) This argument loses point in any event in view of our conclusion that admissibility of the weapon does not turn on the legality of defendant's arrest.

Other claims of error are premised on asserted illegality of the weapon search, hence do not require discussion.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied August 11, 1964, and appellant's petition for a hearing by the Supreme Court was denied September 10, 1964. Mosk, J., did not participate therein.

---

person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission, or after an escape.

''The person making the arrest must, on request of the person he is arresting, inform the latter of the offense for which he is being arrested.''