[Crim. No. 12283.   Second Dist., Div. One.   June 6, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM HENRY DUMAS, Defendant and Appellant.

Donald S. Emmer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter R. Jones, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of possessing marijuana.

In an information filed in Los Angeles on December 7, 1965, defendant was charged with possessing marijuana on November 18, 1965. Defendant pleaded not guilty and in a trial with a jury was found guilty as charged. Probation and a motion for a new trial were denied. Defendant was sentenced to the state prison. A timely notice of appeal was filed.

A resume of some of the facts is as follows: During roll call on the morning of November 18, 1965, police officers were given the license plate numbers of vehicles involved or wanted in connection with the commission of felonies. The police were told that license number NVR 525 was involved in a forgery and a suspect named Betty Jane Odom. At about 10 or 11 a.m. of that morning Officers Boudreau and Murphy saw a 1959 white Cadillac with license number NVR 525. The officers followed the car about a quarter of a mile. When the suspect

car stopped in front of a motel the officers approached the three occupants of the Cadillac car. They asked the driver for his operator's license and the driver stated that his name was Odom and that his driver's license was in the motel. He indicated that his wife was in the motel. Mr. Dansby and defendant, the passengers in the Cadillac car, were requested to show some identification. The persons in the car were asked to get out of the car and the officers conducted a cursory search for weapons, consisting of patting their belts and waistband areas. No one was placed under arrest in this course of events.

Officer Murphy went with Odom into the motel. Officer Boudreau, as a precautionary measure, asked Dansby and defendant to take seats in the rear of the patrol car. Defendant entered the right rear door and sat down immediately behind the driver's seat. Dansby sat on the right side of the rear seat about a foot from defendant.

Officer Boudreau stayed outside of the police car in a position from which he could watch the movements of defendant and Dansby. Boudreau saw defendant reach toward his right pocket, remove a white object which defendant attempted to conceal with his coat and then make a jerking motion toward the seat. Boudreau then requested that each occupant of the police car put his hands on his knees. When defendant's hand came up it was empty. In about five minutes Officer Murphy returned to the police car area from the motel with Mr. and Mrs. Odom. All four persons, Mr. and Mrs. Odom, Dansby and defendant were then placed under arrest for forgery. In the meantime, another police unit had arrived at the scene, and the four suspects were taken to the police station in the second police car unit. After that car had departed, Officer Boudreau and Murphy searched the patrol car which they were operating and in which defendant had just been seated. Behind the rear seat on the left side where defendant had been seated the officers found a packet containing an eyedropper, needle and a marijuana cigarette. The officers recognized the kit as a "hype kit" used by persons involved with illicit narcotics. The police car had been examined that morning and no other persons had been arrested prior to the subject episode.

Officer Murphy talked with defendant about 45 minutes after the arrest and defendant was advised of his constitutional rights prior to that talk. Defendant was shown the "hype kit" and cigarette and he denied any ownership of

such items. Marks on defendant's arms indicated that defendant had used narcotics.

Appellant now asserts that the "hype kit" and the marijuana cigarette were improperly received into evidence in that they were the product of illegal police activity and that the testimony of Officer Boudreau was inconsistent.

▋ Police officers may rely upon information coming to them from official sources (such as roll call). (See *People* v. *Davis,* 205 Cal.App.2d 517, 521 [23 Cal.Rptr. 152]; *People* v. *Estrada,* 234 Cal.App.2d 136, 152 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307]; *People* v. *Melchor,* 237 Cal.App.2d 685, 690 [47 Cal.Rptr. 235]; *People* v. *Kraps,* 238 Cal.App.2d 675, 679 [48 Cal.Rptr. 89].)

The officers had been told at roll call that a certain numbered car was involved in a forgery. Later the officers saw that particularly numbered car and were within their rights to stop the motorists on the street for questioning. (See *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Wiley,* 162 Cal.App.2d 836, 839 [328 P.2d 823]; *People* v. *Stewart,* 189 Cal.App.2d 176, 178 [10 Cal. Rptr. 879]; *People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531]; *Hood* v. *Superior Court,* 220 Cal.App.2d 242, 245 [33 Cal.Rptr. 782]; *People* v. *Cowman,* 223 Cal.App.2d 109, 116 [35 Cal.Rptr. 528]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706].)

Here, as indicated, the officers had reliable information with reference to a suspected felon that such person was involved with a particular vehicle. It was the duty of the officers to secure such information as was available and a common source would be from a person riding with the operator of the wanted car. The investigative questioning provided a ready opportunity for the persons questioned to clear themselves quickly of any offense and thereby to avoid the stigma of further criminal charges.

The temporary detention of appellant was entirely proper under the circumstances. (See *People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, 95-96.) California courts have permitted detention where there was not sufficient probable cause to make an arrest. (*Ballard* v. *Superior Court,* 64 Cal.2d 159, 169 [49 Cal.Rptr. 302, 410 P.2d 838] (footnote 3).) Here the operator of the car did not have a driver's license with him, his name was identical with the name of the suspected forger and the driver said that his wife was in the motel as was his driver's license. The officers divided up, one went into

the motel with the car operator and husband of the suspected forger, the other officer stayed outside with the occupants of the car. They were not taken into custody, there was no actual restraint or submission to custody. (See *People* v. *Robertson,* 240 Cal.App.2d 99, 103 [49 Cal.Rptr. 345].)

The cursory search for weapons was proper. (See *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52] ; *People* v. *Garrett,* 238 Cal.App.2d 324, 327 [47 Cal.Rptr. 731] ; *People* v. *Kraps, supra,* 238 Cal.App.2d 675, 679-680; *People* v. *Strelich,* 189 Cal.App.2d 632, 635 [11 Cal.Rptr. 807] ; *People* v. *Cove,* 228 Cal.App.2d 466, 469 [39 Cal.Rptr. 535].) The realities of present day law enforcement dictate that a failure to make such a search, in many cases, might mean death to policemen.

In any event, nothing was discovered by the cursory search and even if the search should be illegal, the unlawful activity with which appellant is charged in this case, namely, the possession of narcotics, was entirely unrelated and had nothing to do with the search. (See *People* v. *McCarty,* 164 Cal.App.2d 322, 329 [330 P.2d 484] ; *People* v. *Burke,* 208 Cal.App.2d 149 [24 Cal.Rptr. 912].) In other words, the location of the narcotics was not the result of any search of appellant but they were recovered in the police vehicle where appellant had placed them.

The arrest of appellant came after the appellant placed the narcotics in the police car. Even in the event that the arrest outside the motel was illegal, that would not necessarily permeate the subsequent proceedings which occurred. (See *People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633] ; *People* v. *Jones,* 205 Cal.App.2d 460, 468 [23 Cal.Rptr. 418] ; *Bird* v. *Justice Court,* 182 Cal.App.2d 674, 678 [6 Cal.Rptr. 502] ; *People* v. *Martinez,* 180 Cal.App.2d 690, 692 [4 Cal. Rptr. 829] ; *Ringer* v. *Municipal Court,* 175 Cal.App.2d 786, 788 [346 P.2d 881] ; *People* v. *Stice,* 161 Cal.App.2d 610, 613 [327 P.2d 201] ; *Frisbie* v. *Collins,* 342 U.S. 519, 522 [96 L.Ed. 541, 545, 72 S.Ct. 509].)

The prosecution in this case did not profit by anything illegal. (See *People* v. *Bilderbach,* 62 Cal.2d 757, 763 [44 Cal.Rptr. 313, 401 P.2d 921].) The exclusionary rule is designed to prohibit the use of evidence illegally seized. The evidence here introduced was not illegally seized.

If there were discrepancies in the testimony of Officer Boudreau, it was for the trier of fact to determine what was true and what was untrue. (See *People* v. *Kennedy,* 21 Cal.

618

App.2d 185, 201 [69 P.2d 224]; *People* v. *Holman,* 72 Cal. App.2d 75, 89 [164 P.2d 297]; *People* v. *Bodkin,* 196 Cal.App. 2d 412, 415 [16 Cal.Rptr. 506]; *People* v. *Swanson,* 204 Cal. App.2d 169, 173 [22 Cal.Rptr. 178]; *People* v. *Chapman,* 93 Cal.App.2d 365, 382 [209 P.2d 121]; *People* v. *Prewitt,* 52 Cal.2d 330, 335 [341 P.2d 1].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 26, 1967.