[Crim. No. 12768.    Second Dist., Div. One.    Aug. 4, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM CHARLES JONES, Defendant and Appellant.

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney Geenral, and Stanton Price, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of possessing marijuana.

In an information filed in Los Angeles on April 7, 1966, defendant was charged with having possessed marijuana on the 19th day of March, 1966. It was charged further that defendant twice previously had been convicted of a felony, namely, a violation of section 288, Penal Code, in 1963, and a narcotics offense in 1964.

Defendant pleaded not guilty and denied the charge of the prior convictions. A jury trial was duly waived and in a trial before the judge defendant was found guilty as charged and the charged prior convictions were found to be true. Defendant was sentenced to the state prison. A timely notice of appeal of that judgment was filed.

A résumé of some of the facts is as follows: A police radio broadcast by the Pasadena Police Department reported about 2:30 a.m. March 19, 1966, that three or four male Negroes were engaged in stripping cars on the Jack Symes' Used Cadillac Lot at the southwest corner of Colorado Boulevard and Berkeley Avenue, and that the strippers had an automobile parked on Berkeley Avenue not far from the car lot in question.

Sergeant McEwen, of the Pasadena Police Department, was on patrol duty and received the report. Inspector Ridenour of the same police department also received the report and went to the scene, and on going south on Berkeley Avenue saw a 1960 Cadillac parked at the curb in front of 60 South Berkeley Avenue. Defendant was in the car, lying at about a 45-degree angle, his head slumped down toward the steering

wheel. Defendant appeared to be dazed, intoxicated, asleep or in a stupor. Inspector Ridenour rapped on the closed window of the car, but was unable to arouse the defendant. The officer then opened the car door and shook the defendant's arm, thereby awakening him. Inspector Ridenour asked defendant if he had any identification. Defendant replied that he was waiting for a friend. Defendant was again asked if he had any identification, whereupon he opened the glove compartment of the car, looked into it and then replied that he had no identification. Defendant was then asked to step out of the car and he complied. Defendant was asked if he had a driver's license and he replied, after reaching toward his pocket, that he did not have it with him, but that he had one. Inspector Ridenour then advised defendant of his constitutional rights, such as a right to an attorney, to remain silent, that anything he said could be used against him, and so forth. Defendant stated, in effect, that he understood his rights and what had been said to him. Just prior to the time Inspector Ridenour advised defendant of his rights, Sergeant McEwen arrived upon the scene. Defendant was asked why he happened to be there and at first he stated that he had been asked to drive four Negroes (later defendant changed the number to three) to that location and that he expected them to return, but that as yet they had not returned.

Defendant was asked if it would be all right if they (the officers) looked through the car and defendant replied, ''It is all right. Go ahead.'' Sergeant McEwen looked in the glove compartment and found a brown paper sack containing about $270 in currency. Defendant said that that was where he carried his money. Sergeant McEwen then glanced at the floor area in front of the driver's seat and saw a corn chip bag, inside of which were some newspaper wrappings and smaller packages. These were opened and it appeared that the packages contained marijuana. Defendant was then advised that he was under arrest. Defendant stated, in effect, that the marijuana must have been placed there by the men to whom he had given a ride.

Under the left front wheel, slightly under the car, there was found a metal foil-wrapped package of white pills, three $1.00 bills, a newspaper package containing a plant-like substance and two cigarettes. Defendant stated that he had never seen such items before, although they were located about one foot from where defendant had been standing. The cigarettes contained marijuana.

It was stipulated that a chemist be deemed called, sworn and testified that the corn chip packets and the cigarettes contained marijuana.

Defendant testified in his own behalf. He testified that he did not know of any marijuana in his car, that he kept his money in a sack because he had holes in his pockets, that he worked as a car washer and received about $55 per week for his labor. Further, that he did not know the names of the men he had driven to the area where his car was parked, that he had withdrawn some money from a bank account, but he could not remember the address of the bank where he had the account.

Appellant now asserts that the search of the car was unwarranted. There is no merit to appellant's contentions. The police were answering a call with reference to some car stripping on Berkeley Avenue. At a point about 120 yards from the place where the stripping supposedly was taking place the police saw appellant's car parked on the street. The police, upon investigating the car, saw a man at the driver's position who appeared to be ill, drunk, under the influence of drugs, in a stupor or dead. The officers, for any number of reasons, were duty bound to make inquiry about the situation. To any reasonable man the circumstances were such that the police should have done just what they did. (See *People* v. *Mickelson*, 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Perez*, 243 Cal.App.2d 528, 531 [52 Cal.Rptr. 514]; *People* v. *Bird*, 248 Cal.App.2d 307, 309 [56 Cal. Rptr. 501]; *People* v. *Garrett*, 238 Cal.App.2d 324, 327 [47 Cal.Rptr. 194]; *People* v. *McVey*, 243 Cal.App.2d 215, 219 [52 Cal.Rptr. 269].)

When appellant could not produce a driver's license as required by Vehicle Code section 12951, or vehicle registration as required by Vehicle Code section 4000, or any identification for that matter, the police were reasonable in assuming that appellant did not own the car, and was not entitled to be in it.

Ordinarily a person does not carry his money in a paper sack in the glove compartment of his car. Be that as it may, the officer, in glancing at the floor of the car, saw a corn chip sack with smaller bags or wrappings inside. It is not necessary that an officer blind himself to that which is in plain sight, even though it may be that he is looking for something else. (*People* v. *Guerrero*, 247 Cal.App.2d 687, 688 [56 Cal. Rptr. 7].) In any event, appellant gave a valid consent to look through the car.

We have considered all of appellant's contentions and find no merit therein.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 23, 1967.