[Crim. No. 13694. Second Dist., Div. One. Mar. 12, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. NOLAN HINES, Defendant and Appellant.

14

Raymond H. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of furnishing dangerous drugs (§ 11912, Health & Saf. Code); he appeals from the judgment.

Appellant's first contention is that the evidence is insufficient to support the conviction in that the evidence "was not only confusing, in conflict and doubtful but wholly circumstantial." He presents a lengthy factual argument that has no place in a reviewing court; and levels unfounded and unfair accusations against the deputy public defender who represented him as being "unskilled," and that the police officers who made the arrest are "presumed to be brutal, biased and prejudiced and interested in making an arrest" and "it can be assumed that they would say anything and believe anything to make the arrest stand"— statements unworthy of a member of the legal profession. The record shows that the evidence of defendant's guilt is direct evidence and that the only reasonable inference that can be drawn therefrom is that defendant furnished dangerous drugs to one Preyer.

Around 1 p.m. on September 28, 1966, Officers Kington and Whitehead were in the vicinity of 4422 South Avalon on an undercover investigation of bookmaking at the rear of that address; they were dressed in plain clothes and drove an unmarked vehicle. They parked in an alley and walked to a vacant lot area where they observed defendant and Preyer standing at the rear of 4422 South Avalon. Defendant and Preyer were facing each other. The officers saw defendant reach into a brown bag, pull out his cupped hand and place some white objects and foil wrapped objects into a small metal container held by Preyer; he appeared to be counting. Then defendant said to Preyer, "That's it, Man"; Preyer said, "Come on, Man, give me some more. I'll give you some money . . . tomorrow." At that time, aware that this vicinity

was known as a high frequency dangerous drugs area and in three individual businesses in that block arrests had been made for narcotic and dangerous drugs, one of which was located just south of 4422 South Avalon known as the "Pill Palace," and having watched defendant's conduct and observed what appeared to him to be pills being removed by defendant from a bag and placed into a can held by Preyer and heard the conversation between defendant and Preyer, Officer Kington formed the opinion that defendant was selling dangerous drugs to Preyer. Further, immediately after their conversation, defendant looked in the direction of the officers and simultaneously dropped the bag and said, "Cops." Preyer tossed the metal container to the ground and they walked toward a public walkway that led onto Avalon Boulevard, and were about to enter the public walkway when they were told by the officers to stay there. Officer Kington walked to where defendant and Preyer had been observed and recovered from the ground a small paper bag, a metal can, 6 blue capsules of amobarbital (a barbiturate acid derivative), 9 orange capsules containing secobarbital, 3 orange and blue capsules containing tuinal (a mixture of amobarbital and secobarbital), 14 white scored tablets and a metal container with 21 double-scored tablets which contained amphetamine, and 3 blue tablets. All were classified as dangerous drugs. Officer Kington took them back to where Officer Whitehead, defendant and Preyer were standing and showed them to Whitehead. Both having been trained to recognize dangerous drugs, identified the white scored tablets as resembling benzedrine, the foil wrapped capsules, seconal, and the blue capsules, tuinal. They placed defendant under arrest and advised him of his constitutional rights.

The defense was that defendant and Preyer had been gambling in the rear of 4422 South Avalon and somebody called out "police"; as they started to leave the alley, they were stopped by the officers; dice were in Preyer's pocket; Preyer did not attempt to buy any pills from defendant nor did defendant give him any pills; the conversation attributed to them did not occur.

Appellant's second argument is as trite as his first. He contends that there was no probable cause for his arrest since he could only have been arrested by guess, surmise and conjecture in the "warped and biased minds of the arresting officers." Also, he claims the ensuing search and seizure of the capsules and tablets were illegal.

■ A peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (§ 836, Pen. Code; *People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

■ "Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty." (*People* v. *Cockrell*, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Hillery*, 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Talley*, 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].)

■ Aware that the vicinity in which he saw defendant and Preyer was a high frequency dangerous drug area, dangerous drug arrests had taken place in several businesses in the block and one of these places just south of 4422 South Avalon was known as the "Pill Palace," when Officer Kington, who had been trained to recognize dangerous drugs, saw defendant reach into a brown bag, pull out some white objects and some foil wrapped objects and put them in a metal container held by Preyer, heard their conversation indicating a sale transaction and saw defendant look in their direction, simultaneously drop the bag and say "Cops" and walk away, according to his own testimony he then formed the opinion that defendant was selling dangerous drugs in violation of section 11912, Health and Safety Code. Thus, even though Officer Kington had reasonable cause to believe defendant had committed a felony he did not then arrest defendant and Preyer but only detained them for questioning and further investigation. This he had a right and a duty to do. (*People* v. *Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852].) While circumstances short of probable cause to make an arrest may justify such action (*People* v. *Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Ellsworth*, 190 Cal.App.2d 844, 847 [12 Cal.Rptr. 433]; *People* v. *Dumas*, 251 Cal.App.2d 613, 616 [59 Cal.Rptr. 541]), it is apparent that the officer could then have made the arrest. However, the detention of defendant and Preyer for questioning and further investigation did not in and of itself amount to an arrest. (*People* v. *Amos*, 190 Cal.App.2d 384, 388 [11 Cal.Rptr. 834].) While they were being detained by Officer Whitehead for questioning, Officer Kington found on the ground where the transaction had taken

place a small bag, a metal can and pills and capsules which he and Officer Whitehead recognized as dangerous drugs. We concur with the trial court's finding that under these circumstances the officers had reasonable cause for a valid arrest. (Pen. Code, § 836.)

Inasmuch as the dangerous drugs and other evidence were recovered from the ground, there appears to have been no search and seizure. Observing things which are open to view does not constitute a search (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Terry*, 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381]; *People* v. *Roberts*, 47 Cal.2d 374, 377 [303 P.2d 721]) and picking them up does not constitute a seizure.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.