[Crim. No. 2266.   Fourth Dist., Div. One.   Feb. 8, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. IRVING GEORGE ROBERTSON, Defendant and Appellant.

Herbert L. Young, under appointment by the District Court of Appeal and Robert H. Hargrove III for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, S. Clark Moore and Andrea Sheridan, Deputy Attorneys General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant was convicted of the offense of possession of a concealed weapon after having been convicted previously of a felony, viz., a violation of Penal Code section 12021.

On the morning of December 28, 1964, Officer Davis of the San Diego Police Department stopped defendant for ques-

tioning because he bore a striking resemblance to a "facsimile photo" on a police bulletin of a man wanted for murder in Los Angeles. The bulletin related evidence of two homicides, effected by multiple stab wounds, occurring respectively on November 13 and 14, 1964; did not identify the suspect by name; set forth a "facsimile photo" of him; described his physical features; also described the clothes he wore when he left the premises where one of the homicides occurred and was seen carrying a knife by a person who "was menaced" by him; and asked that "names, prints and mugs of suspects" be forwarded "for elimination." Defendant told Davis he lived at the Golden West Hotel; was a tailor; was on his way to work; had been in San Diego approximately 10 days; had been in Los Angeles "approximately six months prior to coming to San Diego"[1]; and that his name was John Joseph Wilson. He was unable to produce any positive identification, and was asked by the officer to accompany the latter to the police station so that he might check the bulletin more thoroughly. Defendant readily consented, saying he would be happy to do so; was advised of his right to remain silent and to counsel; and accompanied the officer to the station, riding in a police ambulance which the officer used for patroling purposes. The officer testified a person under arrest is not transported in an ambulance, but in a "cage car." In the police station defendant was shown the bulletin; agreed with the officer he did resemble the person in the "facsimile photo"; was questioned by another officer, which developed that he had been in Los Angeles at the time of the subject murders; and, following his consent thereto, as testified by him, was photographed and fingerprinted. All of this was part of an investigatory procedure to ascertain whether defendant might have been the person wanted for murder in Los Angeles, and in response to the request contained in the bulletin. He was very cooperative and friendly. When Officer Davis asked to search his room to get proof of his identity he consented. In defendant's presence the patrol captain at the station "told Officer Davis to take him (defendant) back to the hotel, find good, legitimate identification, and then see that he got to work on time." The defendant had said he had to get to work at 11 o'clock. While conducting the search of defendant's room, Davis dis-

---

[1]The defendant testified he indicated to Officer Davis he had been in Los Angeles for six months immediately before coming to San Diego.

covered a blue bag that was zipped and locked; asked defendant what was in it; was told "there were personal things in there"; asked defendant to open the bag but "he said no"; attempted to persuade him to open the bag but he continued to refuse; and thereupon arrested him for murder.[2] The officer took him, and the bag, to the jail, where defendant was booked, and the bag was searched. In the latter there was a social security card bearing defendant's name, Irving George Robertson, a .25 caliber automatic, a holster and 25 rounds of ammunition. At the trial defendant objected to the introduction of the contents of the bag on the ground they had been obtained illegally. His objection was overruled. The issue on appeal is whether admission of the contents of the bag into evidence was error.

---

[2] Officer Davis testified he "talked to him (defendant) for a little while, tried to get him to open the bag, told him the reason I was in the room was to search the room and that I could not stop the search with this bag; in other words, leave the room without knowing what was in the bag. When he then still refused to allow me to look in the bag, I placed him under arrest for murder"; also, "I told him that I had to see what was in the bag. In other words, this was, I had to see if there was identification in there, and he said that he wasn't going to open it, and so I told him, 'Well, I'm going to have to arrest you,' and he said· 'Go ahead.' You know, put out his hands for the handcuffs, and all this sort of thing, and so it was within two or three minutes of that time that I did in fact place him under arrest," and, "I told him . . . I wasn't interested in any inventions that he had or anything like that, but I did have to see in the bag, see if there was identification. Any other thing—."

The defendant testified: ". . . the officer took cognizance of this bag and asked me if I would open it for him. And at this point I sat on the bed and I told him, I says, 'No,' I says, 'This is where I'm going to draw the line.' I says, 'I have been very cooperative with you people. I have been courteous,' and I said· 'you people have been very courteous and cooperative and considerate to me also. I have nothing personal against you, but I am going to have to refuse to open the bag, because it contains my personal belongings, and I don't think you have a right to look into this bag'; also, '. . . I told the officer that I didn't see where he had a right to look into my bag because I was the one that was wanted for murder; that I resembled the wanted person on the "wanted" poster, and that my bag wasn't wanted. "My bag didn't get up out of this room," I think was the words I used, "and go and kill anyone." I said, "If you want to go take anyone into custody, you can take me into custody." At this point I extended my hands. He said, "No, we don't have to put any handcuffs on you." He said, "Why would you refuse to open the bag if there was nothing incriminating in there?" It was like a cordial conversation in a sense, I would say.' . . . 'I believe the officer said, "Why won't you open the bag if there is nothing that you want to hide in the bag?" . . . And he says, "The only thing," he says, "I wouldn't be surprised at anything that you had in that bag." He says, "Anything other than a big, hairy knife." He says, "That is the only thing that would be of interest to me." He says, "Anything else, I wouldn't be interested at all." And he picked the bag up and he shook it and it made a little noise. He asked, "Well, what's in the bag?" And I said, in an offhand manner, I said, "Maybe a shoe or something." I says, "But I am not going to open the bag."'"

Defendant contends that search and seizure of the bag and its contents was illegal because Officer Davis did not have probable cause to arrest him for murder; that his withdrawal of consent to search the bag may not be considered in determining whether probable cause for his arrest existed; and if the arrest was lawful the search of the bag was not incident thereto because it was not contemporaneous with the arrest which occurred when he was taken to the police station on the first occasion, and even though not arrested until the bag was seized the search thereof was not conducted at that time.

■ Implicit in the order overruling defendant's objection to admission in evidence of the bag and its contents is a finding of every fact and inference essential to its support and warranted by the evidence. (*Estate of Rule,* 25 Cal.2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319]; *People* v. *Tannehill,* 193 Cal.App.2d 701, 706 [14 Cal.Rptr. 615].) In determining the sufficiency of the evidence in this regard the governing rule on appeal is that the trial court accepted the evidence and the inferences reasonably deducible therefrom which support its order and rejected that which would support a contrary conclusion. (*Thomas* v. *Hunt Mfg. Corp.,* 42 Cal.2d 734, 736 [269 P.2d 12]; *People* v. *Foster,* 195 Cal.App.2d 651, 652 [15 Cal.Rptr. 891]; *Fries* v. *Anderson, Clayton & Co.,* 190 Cal.App.2d 667, 675 [12 Cal.Rptr. 336].)

The subject search and seizure were proper if made as an incident to defendant's arrest for murder; the arrest took place at his hotel; there was probable cause to make such; he had not been arrested prior to that time; discovery of the bag occurred during a search to which he consented; and the search of the bag was contemporaneous with the arrest. The issue is whether, assuming the court found these facts, the evidence supports such findings.

Defendant's arrest occurred at his hotel room following discovery of the bag, and not when he was stopped on the street and interrogated by the officer, or when he accompanied the latter to the police station. ■ The original contact with defendant was justified as an investigatory procedure by virtue of his striking resemblance to the picture in the police bulletin. His detention at this time did not constitute an arrest. (*People* v. *Mickelson,* 59 Cal.2d 448, 452, 454 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Hilliard,* 221 Cal. App.2d 719, 723 [34 Cal.Rptr. 809].) Implied in the ruling

of the court and supported by the evidence are findings that the subsequent proceedings at the police station were a continuance of this investigation; followed the identification procedure suggested in *People* v. *Mickelson, supra,* 59 Cal.2d 448, 454 (see also *People* v. *Schader,* 62 Cal.2d 716, 723 [44 Cal.Rptr. 193, 401 P.2d 665]); were conducted with the consent and cooperation of defendant; were attended and participated in by him voluntarily, without any restraint upon his liberty; and did not constitute an arrest.

Probable cause to arrest defendant as a person wanted for murder in Los Angeles is adequately supported by evidence showing he bore a striking resemblance to the picture on the police bulletin (Cf. *People* v. *Daniels,* 223 Cal.App.2d 441, 445 [35 Cal.Rptr. 890]; *People* v. *Wiest,* 205 Cal.App.2d 43, 45 [22 Cal.Rptr. 846]; *People* v. *Jackson,* 183 Cal.App.2d 562, 568 [6 Cal.Rptr. 884]); was in Los Angeles at the time the murder was committed; could not supply positive identification that he was John Joseph Wilson; and, after having consented to the search of his premises by the officer, whom he knew was trying to establish his connection with a murder charge, withdrew his consent when the officer located the bag, thus affording the inference that its contents might connect him with the murder.

The fact that defendant refused to permit a search of the bag after previously having consented to a search of the premises, under the circumstances heretofore noted, properly might be considered in determining whether there was probable cause for his arrest. (*People* v. *Kendall,* 212 Cal. App.2d 472, 477 [28 Cal.Rptr. 53].) The situation here is distinguishable from that where a defendant refuses in the first instance to consent to a search. In the latter case refusal to consent does not support an inference the premises sought to be searched contain evidence of guilt because the refusal is premised upon defendant's reliance on his right not to consent. In the instant case defendant had waived this right, and withdrawal of consent upon discovery of the bag, under the circumstances here, justified the belief he did so because it contained evidence implicating him in the Los Angeles murders.

The bag was discovered in the course of a search to which defendant consented and, following his asserted withdrawal of consent, was seized as an incident of his arrest. Whether defendant consented to the search of his room, the scope of that consent, and the extent of the search made thereunder

were questions of fact impliedly determined in support of the court's ruling. At the time of consent defendant was not under arrest. ██ The fact he was the subject of an investigation to determine whether he might be a suspected murderer did not require a finding his consent to search was not given voluntarily. (*People* v. *Smith*, 63 Cal.2d 779, 798 [48 Cal.Rptr. 382, 409 P.2d 222].) The evidence supports the implied finding that the object of the search was proper and the search made was within the scope of the consent given. The court, under the circumstances in this case, was entitled to conclude the consent to search for "identification" was not limited to a search for evidence establishing defendant was not the suspected murderer, but also included a search for evidence establishing he was the murder suspect. The officer indicated to defendant the bag might contain "a big, hairy knife". The subject murders had been committed with a knife. The probability that it might also contain clothing worn by the suspect when seen shortly after one of the murders, was not unreasonable. The fact the officer had this probability in mind might be inferred from his testimony that he told defendant he wanted to look in the bag "to see if there was identification", obviously for evidence that might identify defendant as the suspect. Under these circumstances, seizure of the bag and its subsequent search was directed to a proper purpose incident to defendant's arrest for murder.

██ Defendant contends that as the bag was not opened until he was booked at the police station the search thereof was not an incident to the arrest because it was too remote therefrom in time and place. The bag was taken into custody for the purpose of searching it to ascertain whether its contents implicated him in the Los Angeles murders. As noted, the circumstances furnished reasonable cause for believing a search of the bag might reveal implicating evidence. The search at the police station for this purpose followed in due course. Seizure and search of the bag, although occurring at different times, constituted parts of a single transaction initiated at the time of the arrest and culminating at the time the bag was opened. For this reason the factual situation in the instant case is distinguishable from that in *People* v. *Burke*, 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67], *People* v. *Cruz*, 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889], or *Tompkins* v. *Superior Court*, 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113], which are cited by defendant. Here there is a

connecting chain of events between the time of arrest, seizure of the bag, and ultimate search. (See *People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834] ; *People* v. *Shaw,* *(Cal.App.) 46 Cal.Rptr. 217.) The place where the bag was opened is of no legal consequence. The ruling limiting the search of premises incident to an arrest to those where the arrest is made (*James* v. *Louisiana,* 382 U.S. 400 [86 S.Ct. 151, 15 L.Ed.2d 30] ; *People* v. *Cockrell,* 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116]) obviously does not apply to the search of a bag lawfully seized during a lawful search of premises. Defendant's contention to the contrary is without merit.

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.

A petition for a rehearing was denied February 23, 1966, and appellant's petition for a hearing by the Supreme Court was denied April 5, 1966.

---

*A rehearing was granted on September 3, 1965. The final opinion of the District Court of Appeal is reported in 237 Cal.App.2d 606 [47 Cal.Rptr. 96].