[Civ. No. 1157.   Fifth Dist.   June 9, 1969.]

ALLAN GLENN BRAMLETTE et al., Petitioners, v. THE SUPERIOR COURT OF MERCED COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

800

Terry L. Allen and Robert H. Haden for Petitioners.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Peter G. DeMauro, Deputy Attorneys General, for Real Party in Interest.

CONLEY, P. J.—Allan Glenn Bramlette, Phillip Frank Oldenhage, Carolyn Casados and Daniel Joseph Freitas have petitioned this court for a writ of prohibition, or, in the alternative, a writ of mandamus, to require the Superior Court of Merced County to quash the information against them for possession of marijuana, the felony denounced by section 11530 of the Health and Safety Code. This court issued an order to show cause and a hearing was had, in due course, on the question whether or not the police officer of the City of Merced had cause to halt the panel truck in which they were riding and, after investigation, to arrest the petitioners and charge them with the crime.

The arrest took place at Merced very late on the night of February 16, 1969, and a verified complaint was filed in the Merced Judicial District accusing them of possession of marijuana. The defendants were arraigned in the justice court on February 18, 1969, and after a preliminary examination on March 4, 1969, they were held to answer.

On March 7, 1969, an information was filed in the Superior Court of Merced County. When arraigned in that court on March 24, 1969, they moved to set aside the information on the ground that, under section 995 of the Penal Code, there was no reasonable or probable cause for the commitment. Petitioners' motion was denied and their trial was set for May 6, 1969. In due course, the defendants filed this petition (*Hood v. Superior Court*, 220 Cal.App.2d 242, 245 [33 Cal.Rptr.

782]), claiming that stopping the vehicle occupied by petitioners was unlawful and that, as a consequence, all evidence acquired as a result was inadmissible. (*Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385 [64 L.Ed. 319, 40 S.Ct. 182, 24 A.L.R. 1426]; *People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal. Rptr. 18, 380 P.2d 658].)

It appears to us that the evidence heard at the preliminary examination was sufficient to authorize the arrest and that, consequently, the petitioners are not entitled to either of the writs which they seek.

Gary E. Starbuck of the Merced Police Department was on patrol duty during the early morning hours of the date of arrest; at about 12:30 a.m., he noticed a panel truck parked in an alleyway of a residential section of the city. He drove his patrol vehicle into the alley within a car length of the panel truck and noted that it was actually blocking the alley; while he believed that he could have cited the owner of the vehicle for improper parking, he did not do so but backed out of the alley and resumed his patrol. Starbuck made a mental note that the vehicle was a 1946 Ford panel truck, but this automobile had not been reported to him or to the police department as a suspected car, and he had no warning at that time of any unlawful activity in the neighborhood. The officer passed by another entrance of the alley once again at approximately 1 o'clock but could not ascertain whether the panel truck was still parked there. However, within a short time thereafter he noted that the vehicle was moving slowly on a quiet, desolated street in the vicinity. As a police officer, he was thoroughly familiar with the neighborhood, but he had never seen the panel truck before that night and he decided to stop it to ascertain who was driving the car and what it was doing in that lonely portion of the city, in accordance with his usual practice to stop vehicles apparently lingering at night or in the early morning hours in a quiet and rather desolate area of the city. He said that he followed this custom so that he could keep accurate track of what was happening in the nighttime in portions of the town where activities of this kind were unusual. When he turned on his red light and approached the vehicle, he asked the driver, Phillip Frank Oldenhage, and the two others in the front seat, Carolyn Casados and Daniel Freitas, for their identification, which they readily gave him, showing that each of them was under the age of 21 years. Bramlette and John A. Guerra were seated in the body of the truck on the floor back of the driver's seat. Bramlette, also under 21 years of age, produced proper identifica-

tion, but Guerra in a slurred voice said that he did not have any identification; from his appearance the officer concluded that he, too, was under 21 years of age. The officer knew from the appearance of Guerra when he shined his flashlight upon him, and from his slurred speech that he "was under the influence of something." Starbuck went to the rear of the panel truck, opened the door, and asked Guerra to step out, which the latter did. At that time, Officer Starbuck noticed a paper sack in the rear of the truck near the place where Guerra had been sitting; there protruded from the sack the neck and handle of a gallon jug of wine. Guerra's slurred speech, the odor of wine on his breath, and his difficulty in maintaining his balance made it evident that Guerra was intoxicated. The bottle, although of a gallon size, was only one-fourth full of wine and the stopper was not on the bottle; these facts led Starbuck to conclude that the gallon jug had been in use. The officer advised the occupants of the vehicle that they were being arrested for possession of an alcoholic beverage in violation of section 25662 of the Business and Professions Code, as they were under 21 years of age. Officer Starbuck summoned Officer James Marz of the Merced Police Department to assist him; and, after making sure that the arrested minors could not escape, the officers made a further investigation of the panel truck. Officer Starbuck had previously noted that there were multiple marijuana seeds on the front seat and on the floor board. Further investigation of the car showed three pipes containing marijuana debris, pipe cleaners, a cigarette rolling machine, and plastic bags of marijuana on a protruding portion of the framework above the passenger's front seat, placed in a position so that all of the items were readily available to occupants of the vehicle. The amount of marijuana found, according to Starbuck, was about "one-half a lid," or about enough to make ten cigarettes. The smell of marijuana and marijuana debris were in the pipes. The defendants were then also advised that they were being charged with the possession of marijuana and they were given a "pat-down" for weapons. Additional marijuana was found in the pockets of two jackets in the back of the panel truck, and, after the suspects were taken to the police department, Officer Marz found in the patrol car in which they were transported two match boxes under the front seat and one plastic bag containing what appeared to be marijuana and marijuana "roaches." As the officer had inspected his patrol car prior to transporting the defendants, and the contraband was not present at that time, it is a legitimate inference that the contra-

band in the patrol car, including the two match boxes which contained marijuana "roaches," had been placed there by one or more of the transported suspects.

Petitioners assert that Officer Starbuck did not have a right to stop the panel truck. In order to maintain this position, they quote some of the testimony given by the officer which, as they argue, shows that he was interfering without cause with peaceable citizens in making the inquiry which he did.

■ This attitude does not take into consideration the objective facts which faced the officer at the time he stopped the vehicle and made inquiries as to the identification of the persons who occupied the car. The situation which obtains objectively in such circumstances must be considered in deciding whether a policeman has a right to act in the way that Starbuck did.

■ What is the function of a police patrol? Obviously, it is to help preserve the peace in a given community and to discourage, and stop if possible, any unlawful activity, particularly in a residence section where law-abiding citizens may be subject to unlawful delicts of strangers. The use of the automobile in criminal activity has vastly increased the possibility of unlawful conduct, and the likelihood of escape by criminals from the scene of their crimes. It is for these reasons that police patrols were instigated and are supported in our cities. ■ In our view, it was not only the right of Officer Starbuck but his duty to check any suspicious activity in the circumstances. This panel truck, which he had never seen before, was parked in the middle of the night in a questionably illegal way in an alley located in a home area, and it was proper that the patrol officer should find out more about it. Officer Starbuck had the right to stop the car and to require identification. When he discovered that there was an active breach of the law by the occupants, under circumstances which prima facie made the minors guilty of an offense through the use of an open jug of wine, he was not remiss in ordering their arrest. Immediately after that, he searched the car and the arrested persons and found evidence which also made them subject to arrest for the possession of marijuana.

In *Badillo* v. *Superior Court*, 46 Cal.2d 269, 271-272 [294 P.2d 23], it is said: "In many cases, however, the evidence before the magistrate bearing on this issue may be in conflict or susceptible of conflicting inferences or consist only of the testimony of prosecution witnesses, and under these circumstances the court in ruling on a motion to set aside the information will frequently not be in a position to make a final determination as to the admissibility of the evidence. Accord-

ingly, the information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion [citations], and in such cases the ultimate decision on admissibility can be made at the trial on the basis of all the evidence bearing on the issue [citations]. In the absence of evidence to the contrary, it is presumed that the officers acted legally [citation], and if the issue is raised for the first time on a motion to set aside the information, the motion should be denied unless the evidence before the committing magistrate establishes that essential evidence was illegally obtained.'' (See also *People* v. *Ketchel,* 59 Cal.2d 503 [30 Cal.Rptr. 538, 381 P.2d 394].)

■ A police officer, in performing his official work, may properly question persons when circumstances are such as to indicate reasonably that such course is necessary to the proper discharge of the officer's duties. (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Singletary,* 268 Cal.App.2d 41, 44 [73 Cal.Rptr. 855].) ■ Even if the circumstances are not sufficient on the basis of probable cause to make an arrest, a peace officer still may stop motorists on the street for questioning and should the investigation then reveal a probable cause for making an arrest it may be accomplished, and a reasonable incidental search may be carried on. (*Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Stout,* 66 Cal.2d 184, 191 [57 Cal.Rptr. 152, 424 P.2d 704].)

■ A police officer has a duty to investigate reasonably all suspicious activities on the public streets, particularly at night. (*People* v. *Bloom,* 270 Cal.App.2d 731, 734 [76 Cal. Rptr. 137]; *People* v. *Cowman,* 223 Cal.App.2d 109, 117 [35 Cal.Rptr. 528]; *People* v. *Porter,* 196 Cal.App.2d 684, 686 [16 Cal.Rptr. 886]; *People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Beverly,* 200 Cal.App.2d 119, 125 [19 Cal.Rptr. 67].)

After stopping the car and verifying identification as to all of the occupants except Guerra, Officer Starbuck saw in plain view a partly empty jug of wine near where he had been sitting. ■ A peace officer does not have to secure a search warrant for something that appears in plain view. (*People* v. *Willard,* 238 Cal.App.2d 292 [47 Cal.Rptr. 734]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) ■ The bottle was three-quarters empty and the stopper was not in place. It

was easily accessible to all of the occupants of the panel truck, and Officer Starbuck could reasonably assume that the petitioners were committing a crime in his presence. (Bus. & Prof. Code, § 25662; Pen. Code, § 836, subd. 3.) It was not unreasonable for Officer Starbuck to impute possession to all of the occupants of the automobile. (See *Coverstone* v. *Davies,* 38 Cal.2d 315, 320 [239 P.2d 876].) The search which disclosed the marijuana was incidental to a lawful arrest. (Bus. & Prof. Code § 25662.) It was also then necessary for the peace officers to prepare an inventory of the contents of petitioners' vehicle prior to lawfully impounding it. (*People* v. *Ortiz,* 147 Cal. App.2d 248, 250 [305 P.2d 145].) The search was constitutional. (*People* v. *Webb,* 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708] ; *People* v. *Williams,* 67 Cal.2d 226 [60 Cal.Rptr. 472, 430 P.2d 30].) ▮ The observation of the marijuana seeds on the front seat and floor board did not constitute a search. (*People* v. *Willard, supra,* 238 Cal.App.2d 292; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) And, under the circumstances, the observation of the marijuana seeds themselves justified the arrest of the occupants. (*People* v. *Schellin,* 227 Cal.App.2d 245 [38 Cal.Rptr. 593].) The later search of the vehicle was proper as it was incidental to a lawful arrest and was reasonable. (*People* v. *McVey,* 243 Cal.App.2d 215 [52 Cal.Rptr. 269] ; *People* v. *Lopez,* 60 Cal. 2d 223 [32 Cal.Rptr. 424, 384 P.2d 16].) ▮ The search of a vehicle as here may be made before an arrest so long as the arrest and the search are substantially contemporaneous. (*People* v. *Williams, supra,* 67 Cal.2d 226; *People* v. *Clark,* 256 Cal.App.2d 6 [63 Cal.Rptr. 622] ; *People* v. *Luna,* 155 Cal.App.2d 493 [318 P.2d 116] ; *People* v. *Wozniak,* 235 Cal. App.2d 243 [45 Cal.Rptr. 222].)

The double arrest for possession of the wine and later for possession of the marijuana was justified. It is our conclusion that the arrests and the search were legal, and that the petition for a writ of prohibition should be denied. (*Badillo* v. *Superior Court, supra,* 46 Cal.2d 269; *People* v. *Ketchel, supra,* 59 Cal.2d 503.)

The writ of prohibition and the requested alternative writ of mandamus are denied. The temporary stay is set aside.

Stone, J., and Gargano, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied August 6, 1969.