[Crim. No. 5378. Third Dist. Feb. 16, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LEE BRYANT GLASGOW, Defendant and Appellant.

## COUNSEL

Steven M. Kipperman and Charles G. Miller for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Arnold O. Overoye and Marjory Winston Parker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REGAN, J.**—After a trial by jury, defendant was found guilty of a violation of section 11530.5 of the Health and Safety Code (possession of marijuana for sale). He appeals from the judgment.

On March 6, 1968, at approximately 2:48 a.m., Officer Cahill, a Stockton police officer on patrol, observed defendant's car going in the opposite direction with his high beams on. Defendant dimmed his lights and made a left turn onto Lincoln Street. Apparently for no particular reason, Cahill

also turned onto Lincoln behind defendant. He observed that defendant's muffler system was inadequate and that the license plate light was not functioning.

Defendant stopped at a stop sign one block north at Lincoln and 8th Streets. As Cahill pulled up behind defendant's car he noticed that defendant was "slouched down" in the seat. Thinking that the driver was "a juvenile out at a late hour," Cahill continued to follow him.

After negotiating several more turns defendant proceeded to 7th Street, where he drove past a house on the corner to a second house and pulled into the driveway. He then alighted from the car and walked back toward the corner house. Officer Cahill was observing defendant from about a third of the block away.

Defendant paused at the gate of the fence surrounding the corner house and then walked up the porch steps. He did not attempt to knock but just stood there on the top step for a moment or so. Cahill felt that defendant's conduct might possibly be prompted by the fact the car was stolen. When Cahill concluded that defendant was not going to the door and knock, he decided to talk to him and find out why.

Defendant met Cahill at the gate and Cahill asked what was going on, and defendant replied that he had come there to see his girl. Cahill stated that defendant's physical description was very close to that of a robbery suspect for whom police were looking.

Cahill then checked defendant's identification, made a records and warrants check over his car radio, and requested assistance.

In response to inquiries, defendant indicated that he didn't know exactly where the car registration was. Defendant stated that he had had the car for "four days." Defendant was evasive and nonresponsive as to the contents of the car.

Shortly thereafter Officers Perry and Tirapelle arrived. Cahill then said to defendant, "You've said that there is no registration in the car to your knowledge. You must have some idea of the contents of the car." Defendant replied, "Well, I just—I just got in this car tonight and the only thing I've seen in it is there's some baseball equipment."

Cahill suggested to Perry that he check the car to see if he could locate some registration. Perry went to the driver's side of defendant's car and shined his light into the front seat. On the passenger's side of the floorboard were two brown paper bags. From the wrappings they appeared to Perry to be "commercial packages" of marijuana as such are prepared for shipment out of Mexico.

Officer Perry picked up one of the packages which had a small rip in it. He felt it and smelled it to confirm his original suspicions. Perry then enlarged the hole and could see that the package contained a green vegetable material which appeared to be marijuana. The contents of the two packages were later identified as marijuana, from which approximately 3,000 cigarettes could be made.

An Eloise Lot testified for the defense, and she stated that she lived in the house on the corner where defendant was apprehended. Mrs. Lot testified that she knew defendant and had been expecting to see him the night in question.

It was also the theory of the defense that several persons had access to the car, and that such car had been used by various persons in the days and hours preceding arrest.

Defendant testified in his own behalf. He denied putting the packages of marijuana in the car, and denied knowing that they were there.

### The Issues Presented

(1) Did Officer Cahill have reasonable cause to detain defendant temporarily for investigation and (2) was the discovery of the marijuana the product of an unlawful search and seizure?

The action of the officer in turning and following defendant's car is not proscribed. From his personal observation of defendant's activities the officer was justified in checking defendant's identification and the registration of the vehicle. It was during this check to locate the registration certificate that the bags of contraband were observed by the officer from his position outside the vehicle.

The courts of this state have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450-452 [30 Cal.Rptr. 18, 380 P.2d 658]; *Williams* v. *Superior Court* (1969) 274 Cal.App.2d 709, 711 [79 Cal.Rptr. 489]; *Bramlette* v. *Superior Court* (1969) 273 Cal.App.2d 799, 805 [78 Cal. Rptr. 532].) ■ Thus, circumstances short of probable cause may often necessitate immediate investigation of suspicious persons on the street. (*Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 906-907, 88 S.Ct.

1868]; *People* v. *Curtis* (1969) 70 Cal.2d 347, 357-358 [74 Cal.Rptr. 713, 450 P.2d 33].)

In *Williams* v. *Superior Court, supra,* 274 Cal.App.2d at pages 711-712, the court sets forth the qualifying rules to which temporary detainer is subject.

"[A]lthough circumstances short of probable cause to arrest may justify an officer's act in stopping and temporarily detaining a motorist or pedestrian for questioning, there must be some suspicious or unusual circumstance to justify even this limited invasion of a citizen's privacy. [Citations.] Generally, the test is whether the circumstances are such as to indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of the officer's duties. [Citations.] More specifically, the officer must be able to point to 'specific and articulated facts which, taken together with rational inferences from the facts, reasonably warrant that intrusion.' (*Terry* v. *Ohio, supra,* p. 1880 [20 L.Ed.2d 906].) A mere hunch or subjective suspicion will not justify a temporary detention. [Citations.] And unusual activity alone, unless there is some suggestion that it is related to criminality, is insufficient. [Citations.]"

█ It is also the rule, however, that "[a] police officer has a duty to investigate reasonably all suspicious activities on the public streets, particularly at night." (*Bramlette* v. *Superior Court, supra,* 273 Cal.App.2d at p. 805; *People* v. *Cruppi* (1968) 265 Cal.App.2d 9, 11-12 [71 Cal.Rptr. 42], and cases cited therein.)

Defendant was detained, it is true, prior to the search of the vehicle, the finding of the contraband, and his subsequent arrest. The evidence warrants such detention.

"The law in California on the subject of temporary detention for investigation may be briefly summarized. Circumstances short of probable cause for an arrest may justify temporary detention of a person by a peace officer for investigation and questioning. [Citations.] The circumstances which allow temporary detention are those which 'indicate to a reasonable man in a like position that an investigation is necessary to the discharge of his duties.' (*People* v. *Gibson,* 220 Cal.App.2d 15, 20 [33 Cal.Rptr. 775].)

"Earlier doubts about the constitutionality of temporary detention on less-than-probable-cause-for-arrest have been largely dispelled by the decision of the United States Supreme Court in *Terry* v. *Ohio,* 392 U.S. 1

[20 L.Ed.2d 889, 88 S.Ct. 1868]. There the court sustained a police officer's accost and frisk of loiterers on the street who were behaving suspiciously and were suspected by the officer of planning a hold up. The court recognized 'that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' (392 U.S. at p. 22 [20 L.Ed.2d at pp. 906-907].) In upholding the validity of the police officer's protective search for weapons, the court said: 'It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest.' (392 U.S. at p. 26 [20 L.Ed.2d at p. 909].) Explicit in the decision is approval of police investigations 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . .' (392 U.S. at p. 30 [20 L.Ed.2d at p. 911].)" (*People* v. *Manis* (1969) 268 Cal.App.2d 653, 658-659 [74 Cal.Rptr. 423].)

We find that Officer Cahill had a duty to ascertain defendant's identity and his business at that hour in the neighborhood, and therefore hold that the temporary detention was lawful.

Defendant relies upon *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706] (Reulman). The case is distinguishable, however, since in that case the detention took place in daylight in a business area and the officer merely thought Reulman looked "nervous."

## Search and Seizure

Defendant contends, in several different ways, that the bricks of marijuana were obtained through an unlawful search and seizure conducted without a warrant.

 Defendant argues that the officers had no right to look into defendant's car for his registration, for any belief that the vehicle was stolen is untenable. However, Officer Cahill had a suspicion that the car might have been stolen very recently. The argument overlooks defendant's inconsistent statements about how long he had had the car, his evasiveness about the car's contents, and his apparent lack of knowledge as to the whereabouts of the registration slip. Also, the officers knew from the license number that the vehicle was from the Stockton area; defendant, however, had produced a San Jose driver's license. Thus we conclude that it was reasonable to check defendant's car for a registration slip.

Without opening the car door, Officer Perry shone his flashlight into the car's interior. He saw two brown paper bags resembling bricks; he recognized the "bricks" as being in the usual package form in which marijuana is brought out of Mexico in commercial shipments, i.e., in a brick form (like a Kleenex box) and wrapped in coarse, light brown paper, and tied with a masking-type tape.

■ A police officer does not conduct an unlawful search by looking through a window, including a car window, at something which is in plain view. (*People v. Terry* (1969) 70 Cal.2d 410 [77 Cal.Rptr. 460, 454 P.2d 36]; *People v. Berutko* (1969) 71 Cal.2d 84, 91-93 [77 Cal.Rptr. 217, 453 P.2d 721]; *Bramlette v. Superior Court, supra,* 273 Cal.App.2d at p. 805; *People v. Samaniego* (1968) 263 Cal.App.2d 804, 811 [69 Cal.Rptr. 904].) The fact that Officer Perry used a flashlight did not make his observations a search. (*People v. Sjosten* (1968) 262 Cal.App.2d 539, 546 [68 Cal.Rptr. 832]; *People v Sackett* (1968) 260 Cal.App.2d 307, 310 [67 Cal.Rptr. 157].) ■ Further, "[r]easonable grounds for believing a package contains contraband may be adequately afforded by its shape, its design, and the manner in which it is carried." (*People v. Superior Court* (1969) 273 Cal. App.2d 459, 464 [78 Cal.Rptr. 153]; *People v. Anderson* (1968) 266 Cal. App.2d 125, 132-133 [71 Cal.Rptr. 827]; *People v. Benedict* (1969) 2 Cal.App.3d 400, 403 [82 Cal.Rptr. 759].) In view of the foregoing, we are convinced that the marijuana was not revealed by an unlawful search, but was in plain view of the officers on legitimate business.

Defendant relies upon *People v. Marshall* (1968) 69 Cal.2d 51 [69 Cal. Rptr. 585, 442 P.2d 665]. *Marshall* is distinguishable. There, the contraband was in a closed paper bag in an open box; the bag gave no visible exterior evidence as to its contents; and it was in a building in which a number of policemen were lawfully present, of whom several might have safeguarded the suspected contraband while another went for a search warrant. As pointed out in *People v. Anderson, supra,* 266 Cal.App.2d at page 132: "The distinction between the measures reasonably required by the discovery of suspected contraband in a vehicle capable of mobility and the presence of such contraband in a house is well recognized. (*People v. Terry,* 61 Cal.2d 137, 152-

153 [37 Cal.Rptr. 605, 390 P.2d 381].)" (See also *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 694, n. 9, 89 S.Ct. 2034].)

The judgment is affirmed.

Friedman, Acting P. J., and Janes, J., concurred.