[Crim. No. 681. Fifth Dist. Dec. 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK DIAMOND et al., Defendants and Appellants.

### COUNSEL

Melvin W. Nitz, Public Defender, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky and Joel S. Primes, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**GARGANO, J.**—Defendants, all young Negroes, were arrested five days after the assassination of Dr. Martin Luther King and charged with possession of a combustible substance in violation of subdivision (a) of section 452 of the Penal Code. This section provides in pertinent part: "Every person who possesses any flammable, explosive or combustible material or substance, or any device in an arrangement or preparation with intent to wilfully and maliciously use such material, substance or device to set fire to or burn any buildings or property mentioned in this chapter, is punishable by imprisonment in the state prison, not exceeding five years, or in the county jail, not exceeding one year." Defendants waived a jury and, after court trial, were convicted as charged. They present three contentions for reversal: that Penal Code section 452, subdivision (a), is unconstitutionally vague, that the evidence was insufficient to support the trial court's decision, and that there was no justification for the officer's stopping defendants' car.

Sergeant Grove of the Fresno Police Department was in a police car facing north on Van Ness at Fresno Street about 10:30 p.m. on April 9, 1968, when he noticed two automobiles going east on Fresno Street, a 1956

Buick, white over dark blue or black, and behind it a 1958 yellow Chevrolet. All of the people in both cars were young Negroes. The officer turned right and slowly proceeded east on Fresno Street. Then, the two automobiles entered a parking strip along the courthouse park, made a U turn and again entered Fresno Street, this time traveling west. Suspecting that the vehicles had manuvered to avoid passing his police car, Grove radioed all police officers stationed in the downtown area to stop and check the vehicles out if they again appeared in that area. There had been some disturbances in the city over the recent assassination of Dr. Martin Luther King, and the police had received telephone reports that Negroes had threatened to burn the mall.

Officer Robinson was in the general area of Fresno and Broadway Streets when he heard Sergeant Grove's radio dispatch. At about 11 o'clock Robinson observed the 1956 Buick, occupied by five or six Negro young people, traveling west on Merced Street at a slow rate of speed, stop, and then turn north on Van Ness. The officer stopped the vehicle and discovered that the driver, Frank Diamond, did not have an operator's license. Robinson then accompanied Diamond to the automobile to see the registration certificate. As he flashed his light toward the rear seat to observe the riders, he saw a bottle on the floor in the rear of the car. Removed from the car were three bottles, each containing a mixture of gas and oil, two wooden clubs, a rubber hose, a small pocket knife, a 13-inch hunting knife, two books of matches and a small rolled-up piece of paper which felt damp and appeared to have a gasoline odor. An expert testified that the bottles were fire bombs, were easy to throw and would break on impact; he said the mixture of oil and gas made a fire burn hotter.

We summarily reject the public defender's contention that subdivision (a) of Penal Code section 452 is unconstitutionally vague, and that, if literally construed, would prohibit a farmer from transporting weed oil to destroy weeds on his own farm land. We believe that the conduct proscribed by the section is clearly defined and that the statute is capable of being uniformly enforced. Moreover, mere possession of a flammable explosive or combustible material, substance or device is not a crime, as the public defender suggests; to constitute a crime, such possession must be accompanied by a specific intent to wilfully and maliciously burn buildings or property. And, the existence of this intent must be established by the People, as part of their case in chief, with substantial believable evidence.

We also compendiously reject the public defender's contention that the evidence is insufficient to justify the judgments. Three fire bombs were found in the automobile in which defendants were riding, one on the center floorboard, one on the right front floorboard, and one on the rear

floorboard. Two clubs, a rubber hose and a 13-inch hunting knife were also found in the car. And, defendants were apprehended with their lethal equipment in the downtown area near the threatened mall. ■ It is the rule that possession of contraband need not be exclusive. (*People* v. *Van Valkenburg,* 111 Cal.App.2d 337, 340 [244 P.2d 750]; *People* v. *Showers,* 68 Cal.2d 639, 644 [68 Cal.Rptr. 459, 440 P.2d 939].) It is also the rule that such possession, as well as the specific intent to commit a crime, can be established by the circumstances. (*People* v. *Robarge,* 151 Cal.App.2d 660, 668 [312 P.2d 70]; *People* v. *Welborn,* 242 Cal.App.2d 668, 673 [51 Cal.Rptr. 644].)

The crucial question is whether Officer Robinson had legal cause to stop defendants' vehicle for reasonable investigation. The lethal bottles were in plain view, and defendants apparently concede that if the police officer had sufficient cause to stop the vehicle in the first instance, his seizure of the contraband was proper. ■ As was said in *People* v. *Gale,* 46 Cal.2d 253, 255 [294 P.2d 13]: "Since an automobile may readily be moved from place to place, a search without a warrant is not unreasonable if the officer has reasonable cause to believe it is carrying contraband."

■ The provocation required to permit a police officer to temporarily detain a person for questioning is not the same as that required for a valid arrest or a lawful search. Stated in a slightly different manner, "[w]hether an officer has a right to stop a car and interrogate the occupant is an issue quite separate from whether he has a right to stop the car and to arrest the occupant and conduct a search." (*People* v. *King,* 175 Cal.App.2d 386, 390 [346 P.2d 235].) In fact, it has been suggested that in this state we adhere "to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the discharge of his duties." (*People* v. *Ellsworth,* 190 Cal.App.2d 844, 846 [12 Cal.Rptr. 433].) ■ Thus, in *People* v. *Mickelson,* 59 Cal.2d 448, 454 [30 Cal.Rptr. 18, 380 P.2d 658], our Supreme Court clearly demonstrated that it is not unreasonable for a police officer to stop a vehicle for investigation under suspicious circumstances not amounting to probable cause to make an arrest. In that case there had been a robbery, and the police officer stopped the vehicle in which defendant was riding as a passenger merely because the automobile had taken an erratic route, and he had seen defendant " 'bend forward in the seat, forward and down and raise back up.' " The court, after observing that the officer had not seen the vehicle until 20 minutes after the robbery occurred, that it was being driven toward the scene of the crime and not away from it, that he had no information that the robber had an automobile or a confederate, and that the vehicle's erratic route and defendant's suspicious movement were at

most suspicious circumstances, nevertheless upheld the officer's right to stop the automobile for reasonable investigation. ■ Significantly, Mr. Justice Traynor, while speaking for the majority of the court, had this to say at page 452: "We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified."

■ Applying these principles to the instant case, we conclude that albeit Officer Robinson did not have probable cause to arrest defendants when he first observed the vehicle in which they were riding, he had sufficient cause to stop it for reasonable investigation. A renowned Negro leader had been brutally and senselessly slain by a Caucasian five days before, and there was great unrest in the predominately Negro communities of this and other cities throughout the United States. In fact, there had been several racial incidents in Fresno as a result of the assassination, and the police manpower was concentrated in the downtown area, because the police department and the mayor had received numerous telephone reports that Negro militants were going to burn the mall.[1] When defendants' vehicle was first seen by Sergeant Grove it was traveling in the downtown area near the threatened mall, and was being followed by another vehicle also containing young Negroes. Then, to add to the suspicious circumstances of two carloads of young Negro persons driving near the threatened mall on a tense night, the vehicles suddenly maneuvered in a manner suggesting that the occupants were trying to avoid passing the police car, causing Grove to instruct all other downtown units to stop the vehicles if they again appeared in the downtown area. And, to complete the circle of suspicion, defendants' automobile was again seen in the downtown area about half an hour later, this time by Officer Robinson, who said that it was traveling at an excessively slow rate of speed.

We wish to make it clear in passing, that we do not here hold that there is ever justification for a police officer to stop a vehicle solely because it is occupied by members of an ethnic group. Such a holding would erode the very foundation upon which the Fourth Amendment to the United States Constitution is founded, and would flagrantly deny equal protection of the law to all citizens. We merely believe that by giving our stamp of approval to

---

[1]Sergeant Grove testified that he served as acting shift commander from 6 to 7:30 p.m. on April 9, and that during this short period of time he received some eight to ten calls that Negroes from the West Side were going to burn down the mall; he said that one call came from a Negro woman who said that she had information that some young Negro boys were going to burn down the mall.

Officer Robinson's decision to stop defendants' vehicle for reasonable investigation under the circumstances we have described, we are "striking a balance between a person's interest in immunity from police interference" and the community's right, to demand protection against the wanton destruction of public and private property.

The judgments are affirmed.

Stone, P. J., and Coakley, J., concurred.

A petition for a rehearing was denied January 15, 1970.