7 Cal.App.3d 314 (1970)
86 Cal. Rptr. 628
THE PEOPLE, Plaintiff and Respondent,
v.
DANIEL SEANEZ GARCIA, Defendant and Appellant.
Docket No. 16956.
Court of Appeals of California, Second District, Division One.
May 6, 1970.
*316 COUNSEL
David C. Marcus for Defendant and Appellant.
*317 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey S. Wohlner, Deputy Attorney General, for Plaintiff and Respondent.
OPINION
LILLIE, J.
The trial court found appellant to be a narcotic drug addict within the meaning of section 3100.6, Welfare and Institutions Code, and committed him to the Director of Corrections, California Rehabilitation Center. He appeals from order of commitment and "from each and all orders ... made adverse to" him.
The following relates only to probable cause and the evidence is viewed in a light most favorable to respondent. Two weeks before appellant's arrest, Deputy Sells, Narcotics Bureau, received information from a reliable confidential informant that a female known as Marilyn was residing at 458 1/2 South Sidney Drive and was there involved in the sale of heroin and that many people went there to either purchase or use narcotics. On October 31, 1968, based on this information, he conducted a surveillance of the premises; he saw a male enter and soon leave; he stopped and spoke to him and found he had evidence of narcotic usage but allowed him to continue on his way. On November 7, 1968, Deputy Sells again received information, from a person in custody on a narcotic charge, that Marilyn was selling heroin from this same address. On November 8, 1968, Deputies Sells, Franco and Jesinhous began a surveillance of the premises parking their vehicle approximately 200 to 300 feet away; they had a clear view of the driveway leading directly to the house and watched it through binoculars. When they left the substation it was not then their intention to arrest whoever came out of the premises. Around 3:17 p.m. they saw appellant walk into the house and 15 minutes later exit in the company of a female and proceed down the driveway to the sidewalk. The deputies drove up to where the pair was standing near a car and got out. Deputy Sells approached the female, who identified herself as Mary Narvaiz; he placed her under arrest for violation of narcotic laws.
Deputy Franco approached appellant. Based upon his extensive training and experience as a narcotic officer and long experience in the "buy" program, and the fact he had been told by Deputy Sells concerning the female (Marilyn) and her narcotic transactions at the Sidney Street address where heroin was being sold or used, and that on October 31, 1968, the officers had seen a male enter and exit the location, stopped him and found he had evidence of narcotic usage, it was Deputy Franco's belief when he *318 saw appellant enter the premises and leave 15 minutes later that appellant knew Marilyn and went there to purchase heroin, that some type of narcotic transaction had occurred inside and that appellant had narcotics on him. He displayed his badge and identified himself and his partners as narcotics officers who were conducting a narcotics investigation, then told appellant to put his hands on top of the car "so there wouldn't be any movement as far as weapons or anything is concerned; any time I stop a suspect I always immobilize his hands"; at this time he observed numerous puncture wounds on the back of both of appellant's hands. Asked to describe appellant's condition, Franco testified: "He was in a lethargic condition, as if to be intoxicated or under the influence of something," but he could not smell any odor of alcohol; he described the "lethargic condition" of appellant as "kind of a slow reaction, his reactions are slowed down; in other words ... his condition was the same as other narcotic users that I have observed in the past... I was just observing the defendant, the way he moved and the way he talked, and his eyes were pinpointed ... He was pretty slow in putting his hands up on top of the car"; he spoke slowly. While he did not see defendant put anything up to or in his mouth or swallow anything, it was his "belief that he did go in there to purchase narcotics.... I believe he [swallowed it]." Deputy Franco arrested appellant, patted him down for possible weapons, handcuffed him, advised him of his constitutional rights and placed him in the police vehicle.
Appellant offered no defense.
(1a) Appellant claims that his detention and interrogation were in violation of his rights under the state and federal Constitutions, but assuming that the deputy had the right to stop and question him, there was no justification for conducting a "search" of his person by compelling him to assume a position with his hands on top of an automobile exposing his arms.
(2) "It is well established that a police officer in the discharge of his duties may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties." (People v. One 1960 Cadillac Coupe, 62 Cal.2d 92, 95-96 [41 Cal. Rptr. 290, 396 P.2d 706]; People v. Stout, 66 Cal.2d 184, 191-192 [57 Cal. Rptr. 152, 424 P.2d 704]; People v. Mickelson, 59 Cal.2d 448, 450-451 [30 Cal. Rptr. 18, 380 P.2d 658].) (3) Each case must be judged on its own facts, and the reasonableness of the officer's decision to stop and make inquiry is determined in the light of the circumstances as they appeared to him at the time he was required to act. (People v. Blodgett, 46 Cal.2d 114, 117 [293 P.2d *319 57].) However, "the circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the detaining officers. (See also, People v. Moore, 69 Cal.2d 674, 683 [72 Cal. Rptr. 800, 446 P.2d 800].)" (Irwin v. Superior Court, 1 Cal.3d 423, 426 [82 Cal. Rptr. 484, 462 P.2d 12].) (1b) Here, based upon his extensive training and experience as a narcotic officer and a year's experience in the "buy" program and the fact that he had been told by Deputy Sells that he had reliable information that Marilyn lived at the Sidney Street address and was involved with the sale of heroin and many persons who went there either made a purchase or used narcotics there, and that on a similar surveillance eight days before he had observed a male enter and exit the house, stopped and interviewed him and found he had evidence of narcotic usage, appellant's entering the premises and leaving 15 minutes later rationally suggested to Deputy Franco some activity out of the ordinary relating to a crime that had taken or was taking place and that appellant was involved. The deputy testified it was his belief, upon seeing appellant leave the premises, that appellant knew Marilyn, that some type of narcotic transaction had occurred inside the residence and that appellant had narcotics on him. (Irwin v. Superior Court, 1 Cal.3d 423, 427 [82 Cal. Rptr. 484, 462 P.2d 12].) (4) While it is true that where events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful (Irwin v. Superior Court, 1 Cal.3d 423, 427 [82 Cal. Rptr. 484, 462 P.2d 12]; People v. Moore, 69 Cal.2d 674, 683 [72 Cal. Rptr. 800, 446 P.2d 800]; People v. One 1960 Cadillac Coupe, 62 Cal.2d 92, 96 [41 Cal. Rptr. 290, 396 P.2d 706]), and normally the activity of going into a house and leaving 15 minutes later would indicate no more than a short visit with the occupants, a 15 minute visit to premises known by him to be used for the sale of heroin and frequented by many who buy or use narcotics there, to the experienced officer is not as consistent with innocent as with criminal activity and more reasonably suggests to him a narcotics rather than innocent activity. (5) Although this was not sufficient for arrest, "`circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning'" (People v. One 1960 Cadillac Coupe, 62 Cal.2d 92, 96 [41 Cal. Rptr. 290, 396 P.2d 706]; People v. Mickelson, 59 Cal.2d 448, 450 [30 Cal. Rptr. 18, 380 P.2d 658]; People v. Martin, 46 Cal.2d 106, 108 [293 P.2d 52]; Jackson v. Superior Court, 274 Cal. App.2d 656, 658 [79 Cal. Rptr. 502]) and in the light of the circumstances it would have been unreasonable for the deputy not to have made inquiry. (See People v. *320 Jolke, 242 Cal. App.2d 132, 147 [51 Cal. Rptr. 171].) When he went to the location Deputy Franco had no intention of arresting anyone who came from the premises, and when he approached appellant, he identified himself and his partners as narcotic officers who were conducting a narcotic investigation. However, the investigation was cut short when, before he even could begin inquiry, he asked appellant to place his hands on the car and discovered the puncture marks and his physical condition which led to the arrest.
(6) While appellant would like to turn a safety precaution into a "search," the fact is that Deputy Franco did not ask appellant to place his hands on top of the car for the purpose of a search or to observe his hands or arms but "so there wouldn't be any movement as far as weapons or anything is concerned." For his own protection and that of his fellow officers, Deputy Franco properly took this precaution. (See People v. Curtis, 70 Cal.2d 347, 358-359 [74 Cal. Rptr. 713, 450 P.2d 33]; People v. Mickelson, 59 Cal.2d 448, 450-451 [30 Cal. Rptr. 18, 380 P.2d 658].) It was then the deputy noticed the puncture wounds on the back of both hands. His observation of these marks did not amount to a search for to observe that which is open and in plain sight does not constitute a search. (People v. Lindogan, 212 Cal. App.2d 466, 472 [27 Cal. Rptr. 905].) Certainly the deputy was not required to blind himself to that which is in plain sight. (People v. Roberts, 47 Cal.2d 374, 379 [303 P.2d 721].)
(7a) Finally, appellant claims that puncture wounds were not sufficient to establish probable cause for his arrest. (8) "A peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person whom he has arrested has committed a felony. (9) Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officer at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. (People v. Talley, 65 Cal.2d 830, 835-836 [56 Cal. Rptr. 492, 423 P.2d 564].)" (People v. Hogan, 71 Cal.2d 888, 890 [80 Cal. Rptr. 28, 457 P.2d 868].) (10) The question of probable cause must be tested by the facts and circumstances which the record shows were known to the officer at the time he was required to act. (People v. Gallegos, 62 Cal.2d 176, 178-179 [41 Cal. Rptr. 590, 397 P.2d 174].)
(7b) It is true that marks alone are not sufficient to constitute reasonable cause, but the facts known to and observed by Deputy Franco at the time he saw the marks including appellant's lethargic condition and slow reaction, appearance of being intoxicated or under the influence of something absent an odor of alcohol, the pinpoint pupils of his eyes and his *321 physical condition  "the same as other narcotic users [he] had observed in the past"  were sufficient to give him reasonable cause to believe that appellant was guilty of a crime. (People v. Dominguez, 236 Cal. App.2d 464, 466 [46 Cal. Rptr. 23]; People v. Ferguson, 214 Cal. App.2d 772, 776 [29 Cal. Rptr. 691].)
The order of commitment is affirmed; the purported appeal from all other adverse orders is dismissed.
Wood, P.J., and Thompson, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied July 1, 1970.