[Civ. No. 30142. First Dist., Div. One. Nov. 9, 1971.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
RICHARD DUNBAR ACOSTA, Real Party in Interest.

COUNSEL

Evelle J. Younger, Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

John F. Marshall for Real Party in Interest.

OPINION

**ELKINGTON, J.**—We issued an alternative writ of mandate to inquire into the Fourth Amendment reasonableness of police conduct which led to the discovery of restricted dangerous drugs, and a consequent charge against Richard Acosta of transportation of such drugs. (Health & Saf. Code, § 11912.) The superior court in Penal Code section 1538.5 proceedings had suppressed the subject drugs as evidence.

While his car was stopped at a traffic light at 1:45 a.m., a police officer observed the front seat passenger of a following vehicle pick up what appeared to be a beer can, drink from it, and then put the can out of view. A few moments later the police car's red light was activated, causing the other automobile to stop. The purpose was to see if there was an open container, or drinking, of an alcoholic beverage in violation of Vehicle Code section 23121 or section 23122.[1] The driver of each vehicle left his car. Asked by the police officer what his passenger was drinking the driver said that it was an "orange drink." The officer testified. "He said that he would like to show me. He walked back to the vehicle, opened the left front door and said, 'Officer, come here, look for yourself.' At that point I did approach the left front door that was open. I looked inside and observed the person in the right front seat, which was Padgett, holding a Fanta brand name orange can in his left hand; and also on the seat next to his left leg was what appeared to be a six-inch .38 revolver."[2]

---

[1]Vehicle Code section 23121 provides: "No person shall drink any alcoholic beverage in any motor vehicle when such vehicle is upon any highway. . . ."

Vehicle Code section 23122 provides: "No person shall have in his possession on his person, while in a motor vehicle upon a highway, any bottle, can, or other receptacle, containing any alcoholic beverage which has been opened, or a seal broken, or the contents of which have been partially removed."

[2]Penal Code section 12031, as relevant, provides: "(a) Except as provided in subdivision (b) [here inapplicable], every person who carries a loaded firearm on his person or in a vehicle while in any public place or on any public street in an

Obviously considering the probability that the gun was loaded the officer "backed up, and pulled [his] service revolver [and] advised [his] partner, Officer Lansdowne, that there was a gun in the car. [They] ordered the occupants to get out." An examination of the weapon disclosed four live rounds in its cylinder. The car's occupants, three in number including defendant Richard Acosta who was seated on the rear seat, were arrested. On the rear seat the officers observed another loaded revolver. A search disclosed a loaded sawed-off shotgun under the rear seat's left arm rest and 49 white scored tablets. From the officer's training and experience he assumed the tablets to be, as they were in fact, amphetamine, a restricted dangerous drug. These tablets were the subject of the action below against Acosta. At the Penal Code section 1538.5 hearing below the superior court ruled that they were the product of a search and seizure that was void under the Fourth Amendment.

■ The issue before the lower court was whether the police had a right to stop the car and question the front seat passenger, or at least obtain a closer look at the container that had been in his hands. The court found constitutional fault in the detention, concluding that in taking possession of the guns and contraband drugs the police had seized forbidden "fruit of the poisonous tree."

■ In the superior court, and here, Acosta has relied heavily on certain language of *Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 362 P.2d 12]—*"Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. . . ."*[3] (Italics added.)

We note initially that four cases are cited by *Irwin* as support for this proposition: *People* v. *Moore,* 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Escollias,* 264 Cal.App.2d 16 [70 Cal. Rptr. 65]; and *People* v. *Hunt,* 250 Cal.App.2d 311 [58 Cal.Rptr. 385]. From our examination of this authority we find no such support.

---

incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory is guilty of a misdemeanor. . . .

"(c) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. . . ."

[3]This observation has been cited in *Remmers* v. *Superior Court,* 2 Cal.3d 659, 664 [87 Cal.Rptr. 202, 470 P.2d 11]; *Stern* v. *Superior Court,* 18 Cal.App.3d 26, 29-30 [95 Cal.Rptr. 541]; *Flores* v. *Superior Court,* 17 Cal.App.3d 219, 222 [94 Cal.Rptr. 496]; *Pendergraft* v. *Superior Court,* 15 Cal.App.3d 237, 241 [93 Cal.Rptr. 155]; *People* v. *Garcia,* 7 Cal.App.3d 314, 319 [86 Cal.Rptr. 628]; *People* v. *McLean,* 6 Cal.App.3d 300, 305 [85 Cal.Rptr. 683].

■ Acosta's argument seems to be that in his case, from the officer's observation and knowledge, it was just as likely that he was drinking from a soft drink container, as from a beer can. It follows, he argues, that under *Irwin's* announced rule the police were prohibited from making any further inquiry.

■ If the statement of *Irwin* is to be literally construed, Acosta's argument must be accepted. Its narrow language can only mean that to justify *any* police detention the facts apparent to the officer, weighed against the probability of innocence, must preponderantly suggest criminal activity of the suspect. But such a construction would bring a novel concept into otherwise settled rules relating to permissible police detention. It would equate the right to so detain with reasonable or probable cause for an arrest—for if the apparent facts must preponderantly tend to establish criminal activity—then certainly they would " 'lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. . . .' " (*People* v. *Terry*, 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961].) Indeed, the quantum of evidence required for police detention would also sustain a verdict of guilt, for a preponderance of evidence of criminal activity by an accused must be deemed "substantial evidence" on appellate review. (See *People* v. *Mosher,* 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].)

So construed, the language of *Irwin* is in deep conflict with settled authority, both state and national.

Perhaps the best known illustration is the leading case of *Terry* v. *Ohio,* 392 U.S. 1, 8 [20 L.Ed.2d 889, 898, 88 S.Ct. 1868]. In that case a police officer without pretense of probable cause for an arrest reasonably believed "that the [three] defendants were conducting themselves suspiciously [in the vicinity of a store] and some interrogation should be made of their action. . . ." The officer decided to detain them for questioning. In doing so he "grabbed" one of the men, "spun him around," and made a productive weapons search, after which the men were arrested. From an examination of the facts of that case, in any reasonable view it must be concluded that the conduct of the detained men was *not* more consistent with criminal, than with innocent, activity.

Recognizing the "governmental interests"—underlying the "recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating *possibly* criminal behavior even though there is no probable cause to make an arrest"—the court found the officer to be exercising a "legitimate investi-

gative function" in his decision to detain and question Terry and his companions. (P. 22 [20 L.Ed.2d at pp. 906-907]; italics added.) The court then held (p. 30 [20 L.Ed.2d at p. 911]): "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity *may* be afoot . . . ." he is to be permitted reasonably to detain and question the suspect. (Italics added.)

It will be noted that certain words taken from *Terry* have been emphasized by us. That court was careful to permit reasonable detention and investigation in the case of "*possibly* criminal behavior" and where the officer reasonably concludes that "criminal activity *may* be afoot." Nowhere does the court suggest that such detention is allowed only where the probability of criminal behavior outweighs the probability of innocence.

In *People* v. *Mickelson*, 59 Cal.2d 448, 452 [30 Cal.Rptr. 18, 38 P.2d 658], California's leading case on the subject, a robbery by "a fairly tall white man of large build with dark hair who was wearing a red sweater" was reported to police. About 20 minutes later an officer saw an automobile about six blocks from and traveling toward the robbery scene. One of its occupants appeared to be a "large white man with dark hair wearing a red sweater or jacket." (P. 453.) Although probable cause for arrest was clearly nonexistent, since obviously there "could have been more than one tall white man with dark hair wearing a red sweater abroad at night in such a metropolitan area" the court held, "It was not unreasonable for the officer to stop [the] car for investigation . . . ." (P. 454.) Here the chances that the "tall white man" was engaged in criminal activity were slight, as compared with the probability of innocence, yet a reasonable police detention was held proper.

Some recent decisions of the Court of Appeal of this state approving police detention of an automobile under suspicious circumstances, but where beyond any doubt the apparent probability of innocence outweighed that of guilt follow: *People* v. *Nickles*, 9 Cal.App.3d 986 [88 Cal.Rptr. 763]; *Anderson* v. *Superior Court*, 9 Cal.App.3d 851 [88 Cal.Rptr. 617]; *People* v. *Anthony*, 7 Cal.App.3d 751 [86 Cal.Rptr. 767]; *People* v. *Diamond*, 2 Cal.App.3d 860 [83 Cal.Rptr. 11]; *People* v. *Turner*, 2 Cal. App.3d 632 [82 Cal.Rptr. 763]; *People* v. *Adam*, 1 Cal.App.3d 486 [81 Cal.Rptr. 738]; *Jackson* v. *Superior Court*, 274 Cal.App.2d 656 [79 Cal. Rptr. 502]; *People* v. *Stephenson*, 268 Cal.App.2d 908 [74 Cal.Rptr. 504]; *People* v. *Singletary*, 268 Cal.App.2d 41 [78 Cal.Rptr. 855]; *People* v. *Heard*, 266 Cal.App.2d 747 [72 Cal.Rptr. 374]; *People* v. *Irvin*, 264 Cal. App.2d 747 [70 Cal.Rptr. 892].

But for the language of *Irwin* (1 Cal.3d 423) upon which Acosta relies and the cases which have adopted, or at least quoted, that language, we have been unable to find authority holding that where one engages in equivocal conduct which is subject to inferences of lawful *or* criminal activity, the Fourth Amendment bans otherwise reasonable investigative detention by police officers.

We think the true rule is stated elsewhere in *Irwin* where the court says (at p. 427): "[A] detention based on 'mere hunch' is unlawful . . . even though the officer may have acted in good faith . . . . 'There must be a "rational" suspicion by the peace officer that some activity out of the ordinary is or has taken place . . . some indication to connect the person under suspicion with the unusual activity . . . . [and] some suggestion that the activity is related to crime.'" (See also *People* v. *Henze,* 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545].)

This latter rule comports with the pronouncement of *Terry* v. *Ohio, supra,* 392 U.S. 1, *People* v. *Mickelson, supra,* 59 Cal.2d 448, and the great bulk of authority on the subject in this state and nation. We believe it to be the intent of the *Irwin* court that inconsistent language, if any, found in its opinion should be disregarded.

We now apply this latter rule to the case before us. The officer observed Padgett, a passenger in a motor vehicle, drinking from what appeared to be a beer can. While the container could have been a soft drink can, there was nevertheless a credible "rational suspicion" that it was not; there was an obvious "suggestion" that the conduct was in violation of the Vehicle Code. The officer accordingly had a right (we think a duty) to investigate further by stopping and temporarily detaining Acosta's car. The detention being constitutionally permissible, it did not taint the evidence uncovered as a result of the following rapidly unfolding events. The People's application for mandate must therefore be granted.

We have considered the several cases relied upon by Acosta. Unlike the case before us, they concern factual situations supporting the courts' conclusions that the questioned police detentions rested on no rational suspicion or suggestion of criminal activity, but instead on mere "hunch" and "speculation."

Let the peremptory writ of mandate issue.

Molinari, P. J., and Sims, J., concurred.